In re Carol Freeman MARSCH, Debtor (Two Cases).

John D. MARSCH, Claimant–Appellant,

v.

Carol F. MARSCH, Respondent–Appellee (Two Cases).

Nos. 92–56442, 92–56443.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 1994.

Decided Sept. 14, 1994.

---

Michael L. Sandford and John P. Caviness, Hill & Sandford, Santa Barbara, CA, for claimant-appellant.

Joseph M. Sholder, Michaelson, Susi & Michaelson, Santa Barbara, CA, for respondent-appellee.

Before KOZINSKI and TROTT, Circuit Judges, and WILLIAMS, District Judge.*

Per Curiam; Partial Concurrence and Partial Dissent by Judge TROTT.

## PER CURIAM.

Before a state court could enter a restitution judgment against Carol Marsch ("debtor") in favor of her ex-husband, John Marsch, she filed a Chapter 11 petition. The bankruptcy court found that debtor, who was not in business, filed the petition to prevent entry of the judgment and avoid posting an appeal bond, even though debtor had sufficient assets to pay the judgment or post the bond. Consequently, the bankruptcy court dismissed the petition, holding that "[i]t is not the purpose of the bankruptcy code to allow a debtor to file Chapter 11 bankruptcy to avoid the posting of an appeal bond where the debtor has the clear ability to satisfy the judgment in full from nonbusiness assets." Thus, the bankruptcy court characterized the petition as a "bad faith" filing and imposed sanctions pursuant to Bankruptcy Rule 9011.

The Bankruptcy Appellate Panel ("BAP") reversed both the dismissal for "bad faith" and the award of sanctions. We have jurisdiction pursuant to 28 U.S.C. § 158(b), and we reverse.

## I

In 1989, debtor obtained a judgment against John Marsch in state court. Pursuant to that judgment, John Marsch transferred certain shares of stock to debtor. In 1991, the state appellate court reversed the trial court's judgment and remanded the case for further proceedings. On June 3, 1991, the state trial court issued a tentative decision requiring debtor to return the value of the stock to John Marsch. The court instructed John Marsch's counsel to prepare a formal judgment for restitution.

Before the state court could enter the proposed restitution judgment in the amount of approximately $2,557,000, debtor filed a Chapter 11 petition. John Marsch moved to dismiss the petition, arguing debtor filed in "bad faith" solely to avoid paying the judgment or posting an appeal bond. The bankruptcy court agreed and dismissed the petition because it did not serve a legitimate purpose under the Bankruptcy Code, and, alternatively, because it was not filed in the best interests of the parties pursuant to 11 U.S.C. § 305(a)(1). Dismissal was not to be effective until 60 days from the date of the hearing on the motion to dismiss in order "to allow the debtor sufficient time to liquidate sufficient assets to pay the creditors in full." The bankruptcy court also sanctioned debtor $27,452 pursuant to Bankruptcy Rule 9011 because "neither the debtor nor her attorney could have formed a reasonable belief that the filing was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or that it was filed for a proper purpose."

On appeal, the BAP affirmed the bankruptcy court's dismissal of the petition pursu-

---

* The Honorable Spencer Williams, Senior United States District Judge for the Northern District of   California, sitting by designation.

ant to 11 U.S.C. § 305(a)(1).[1]  However, the BAP held that the bankruptcy court abused its discretion in dismissing the petition for "bad faith" filing.  According to the BAP, the bankruptcy court's decision to delay dismissing the petition for 60 days was "inconsistent with a determination that the debtor filed her petition for delay and harassment" because the bankruptcy court "recogni[zed] that the debtor was entitled to bankruptcy protection for a period of time."  The BAP also held that the award of Rule 9011 sanctions was an abuse of discretion because debtor could have reasonably believed her petition "was filed for valid reorganization purposes."

## II

■ We review de novo whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code.  We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a "bad faith" filing.  *In re Stolrow's, Inc.*, 84 B.R. 167, 170 (9th Cir. BAP 1988).  We review the finding of "bad faith" for clear error.  *See In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994).  After reviewing the record, we hold that the bankruptcy court correctly determined that the purpose for which the petition was filed was not consonant with the purpose of the Bankruptcy Code, and thus that its decision to dismiss the case was proper.

■ The bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. § 1112(b).  Although section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal.  *See, e.g., In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *Stolrow's*, 84 B.R. at 170; *In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr. N.D.Ill.), *aff'd*, 119 B.R. 149 (N.D.Ill.1990). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986).  The test is whether a debtor is attempting to unreasonably deter and harass

creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. *Id.*

■ The term "good faith" is somewhat misleading.  Though it suggests that the debtor's subjective intent is determinative, this is not the case.  Instead, the "good faith" filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings.  *See N.R. Guaranteed*, 112 B.R. at 271–72.  Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.  *See Furness v. Lilienfield*, 35 B.R. 1006, 1011 (D.Md.1983); Lawrence Ponoroff & F. Stephen Knippenberg, *The Implied Good Faith Filing Requirement: Sentinel of an Evolving Bankruptcy Policy*, 85 Nw.U.L.Rev. 919, 946–47 (1991).  Pursuant to 11 U.S.C. § 1112(b), courts have dismissed cases filed for a variety of tactical reasons unrelated to reorganization.  While the case law refers to these dismissals as dismissals for "bad faith" filing, it is probably more accurate in light of the precise language of section 1112(b) to call them dismissals "for cause."

One limitation some courts have implied under section 1112(b) involves Chapter 11 cases filed to stay a state court judgment against the debtor pending appeal.  In those cases, courts have expressed concern that the petition is merely a "litigating tactic" designed to "act as a substitute for a supersedeas bond" required under state law to stay the judgment.  *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr.S.D.N.Y.1984).

Several bankruptcy courts have held that a debtor may use a Chapter 11 petition to avoid posting an appeal bond if satisfaction of the judgment would severely disrupt the debtor's business.  A petition filed for this purpose doesn't comport with the objectives of the bankruptcy laws, however, if the debtor can satisfy the judgment with nonbusiness assets.  *See, e.g., In re Sparklet Devices, Inc.*, 154 B.R. 544, 548–49 (Bankr.E.D.Mo. 1993); *In re Harvey*, 101 B.R. 250, 252

---

1. The 11 U.S.C. § 305(a)(1) issue is not before us on appeal.  Under section 305(c), an order dismissing a case pursuant to section 305(a) is not reviewable by the courts of appeals.

(Bankr.D.Nev.1989); *In re Holm,* 75 B.R. 86, 87 (Bankr.N.D.Cal.1987).

We need not decide whether bankruptcy laws can be used to skirt state court procedural rules in this manner. The bankruptcy court found that the debtor's Chapter 11 petition was filed solely to delay collection of the restitution judgment and to avoid posting an appeal bond. Even assuming a Chapter 11 petition may be used for this purpose when enforcement of a judgment would cause severe business disruption, a question we leave open, this would not help the debtor here. The bankruptcy court found that the debtor had the financial means to pay the judgment. Moreover, because she wasn't involved in a business venture, the judgment didn't pose any danger of disrupting business interests. These factual findings are clearly supported by the record; the bankruptcy court thus correctly held that the debtor's petition was filed in bad faith. Dismissal of the petition for cause pursuant to section 1112(b) was proper.

█ The BAP didn't squarely address this issue. Instead, the BAP was distracted by the bankruptcy court's decision to delay dismissal for 60 days. According to the BAP, this delay constituted a "determination that the debtor was entitled to the protection of the Bankruptcy Code for a period of time" and was "inconsistent" with the decision that the filing was in bad faith.

We reject the BAP's analysis. The bankruptcy court never held that debtor was entitled to the protection of the Bankruptcy Code. In fact, at the hearing, the bankruptcy court stated: "It looks to me like this stuff can be liquidated in 60 days. I'm inclined to give her 60 days ... *which I don't think I have to give her*" (emphasis added). Apparently, the bankruptcy court thought it had discretion to delay dismissal to allow debtor to conduct an orderly liquidation. In this the bankruptcy court erred; immediate dismissal was the only appropriate course once the court found that the petition was filed without a legitimate purpose. But this has no bearing on the court's bad faith determination. Even though the bankruptcy court abused its discretion by delaying dismissal for 60 days, this error does not undermine its

earlier determination that the petition was not a legitimate invocation of the bankruptcy laws.

## III

█ Bankruptcy Rule 9011, like its sister rule, Federal Rule of Civil Procedure 11, calls for the imposition of sanctions on litigants and attorneys who file pleadings and papers in violation of the rule's requirements. These requirements are two-fold: First, the signer of the pleading must certify it isn't frivolous, i.e., that "it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Bankr.R. 9011. Second, the signer must ensure that the paper or pleading "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* A plain reading of the rule's language suggests these are separate requirements, so that either frivolousness *or* improper purpose may serve as a basis for sanctions.

Nevertheless, in *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir. 1990) (en banc), we held that under FRCP 11 "complaints are not filed for an improper purpose if they are non-frivolous." *Id.* at 1362. *Townsend* thus removed improper purpose as an independent basis for the imposition of sanctions, making the inquiry under FRCP 11 turn entirely on whether the paper or pleading is frivolous. In reaching this conclusion, we stated that a complaint "is the vehicle through which [a plaintiff] enforces his substantive legal rights," and that it would be "counterproductive ... to penalize the assertion of non-frivolous substantive claims, even when the motives for those claims are not entirely pure," because the public often benefits when plaintiffs seek to enforce their rights. *Id.*

█ Because FRCP 11 and Bankruptcy Rule 9011 use virtually identical language, we often rely on cases interpreting the former when construing the latter. *See, e.g., In re Grantham Bros.,* 922 F.2d 1438, 1441 (9th Cir.1991). But this basis for treating the two rules alike actually cuts *against* following

*Townsend,* a case that subordinates the language (which is similar) to policy considerations (which may be different). In deciding whether to follow *Townsend*'s lead, then, we must ask whether the policy considerations that prompted the court there to depart from the clear language of FRCP 11 apply with equal force in the bankruptcy context. We conclude they do not. While bankruptcy proceedings serve important purposes, they seldom carry the broad policy implications of many federal lawsuits, such as those seeking enforcement of environmental or antitrust laws. At the same time, experience has shown that bankruptcy proceedings are subject to a degree of manipulation and abuse not typical of civil litigation.[2]

■■■■■ These differences between bankruptcy proceedings and ordinary civil litigation militate against wholesale adoption of *Townsend*'s reasoning in interpreting Bankruptcy Rule 9011. Nonetheless, we accept *Townsend*'s basic teaching, which is that frivolousness and improper purpose are not wholly independent considerations but "will often overlap." 929 F.2d at 1362. We thus adopt an interpretation of Bankruptcy Rule 9011 that differs somewhat from *Townsend*'s interpretation of FRCP 11, but one we believe is more faithful to Rule 9011's language and more consistent with the realities of bankruptcy practice. We conclude that bankruptcy courts must consider both frivolousness *and* improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other.[3]

Applying this standard to the case before us, we conclude that the bankruptcy court did not abuse its discretion by imposing sanctions. With respect to frivolousness, we cannot conclude that debtor's petition was completely without legal foundation. Neither this court nor a court in respondent's district has decided whether debtors who have sufficient nonbusiness assets to pay a judgment may nevertheless use a Chapter 11 petition to avoid posting an appeal bond. As a result, debtor ostensibly asserted "a good faith argument for the extension, modification, or reversal of existing law." Bankr.R. 9011; *see Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 471–72 (9th Cir.1990). The overwhelming weight of authority in districts where the issue has been decided, however, flatly contradicts the position asserted by the debtor. *See, e.g., In re Sparklet Devices, Inc.,* 154 B.R. 544, 548–49 (Bankr.E.D.Mo. 1993); *In re Harvey,* 101 B.R. 250, 252 (Bankr.D.Nev.1989); *In re Holm,* 75 B.R. 86, 87 (Bankr.N.D.Cal.1987). And the two cases providing some support for her position involved debtors who were unable to post an appeal bond—clearly not the situation here. *See In re Ford,* 74 B.R. 934, 938 (Bankr. S.D.Ala.1987); *In re Corey,* 46 B.R. 31, 32–33 (Bankr.D.Haw.1984). While debtor's petition can't be characterized as wholly frivolous, it was certainly of dubious legal merit.

Turning to Bankruptcy Rule 9011's second element, the record clearly reveals that debtor's petition was filed for an improper pur-

---

**2.** For example, abuse of bankruptcy proceedings by renters became so widespread in the Central District of California that "[i]n 1991, J. Clifford Wallace, Chief Judge of the Ninth Circuit Court of Appeals, established an Ad Hoc Committee on Unlawful Detainer and Bankruptcy Mills to look into possible solutions to the practice of abusive filings to prevent eviction." Judge Geraldine Mund, *Updated Report of Unlawful Detainer Task Force* 1 (1992). The committee found that bankruptcy "mills" are a substantial cause of the abuse: They churn out large numbers of petitions (which result in an automatic stay, forestalling eviction), but pursue no further action. Estimates suggest that in the Central District alone, some 20,000 to 40,000 such petitions are filed every year for the sole purpose of delaying the debtor's eviction. *See id.* at 7. As those familiar with bankruptcy practice are only too painfully aware, this type of strategic manipulation isn't limited to renters' petitions. *See generally* Marcy J.K. Tiffany, *Crime and Bankruptcy,* 24 Bankr.Ct.Dec. (CRR), at A1 (Sept. 2, 1993).

**3.** This type of sliding scale approach has proved eminently workable in other contexts. When evaluating preliminary injunctions, for example, we use a sliding scale in which the balance of hardships and probability of success on the merits are the outer reaches of a single continuum. *See, e.g., Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983); *Benda v. Grand Lodge of Int'l Ass'n of Machinists,* 584 F.2d 308, 315 (9th Cir. 1978) (noting that if the balance of hardships "tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly").

pose. As noted earlier, *see* pp. 828–29 *supra,* the bankruptcy court found that the petition was filed solely to delay collection of the judgment and avoid posting an appeal bond, even though debtor had the ability to satisfy the judgment with nonbusiness assets. Debtor's action was a transparent attempt to use a Chapter 11 petition and the resulting stay as an inexpensive substitute for the bond required under state law. When combined with the petition's flimsy legal basis, this robust showing of improper purpose clearly demonstrates that sanctions were in order.

■■■■ Having determined that sanctions were called for, we must next decide whether the amount of the sanctions awarded constituted an abuse of discretion. The bankruptcy court imposed sanctions of $27,452, which represented the amount of attorney's fees and costs incurred by appellant in fighting the petition. We find that the sanctions award was properly calculated to remedy the debtor's misconduct. A restitutionary award compensating the opposing party for unnecessary litigation expenses—as opposed to a punitive fine paid to the court—is a particularly appropriate sanction in cases involving manipulative petitions filed principally for purposes of delay and harassment.

**REVERSED and REMANDED.**

TROTT, Circuit Judge, concurring in part and dissenting in part:

Were we writing on a clean slate, I might wholeheartedly concur across the board with my colleagues. But we are not. Thus, although I concur in most of the majority's opinion, I must respectfully dissent from Part III regarding the imposition of Rule 9011 sanctions. In my judgment, our en banc holding in *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir.1990) (en banc) precludes the approach to this issue taken by the majority.

The *Townsend* decision essentially reads out of Rule 11 plain language appearing to authorize an award of sanctions upon a showing only of improper purpose. As we said in

that case, "with regard to complaints which initiate actions, ... such complaints are not filed for an improper purpose if they are non-frivolous." *Id.* at 1362. In other words, a court may not impose Rule 11 sanctions for a "bad faith" filing unless it also finds that the petition was frivolous, i.e., "[A] determination of improper purpose *must* be supported by a determination of frivolousness when a complaint is at issue." *Id.* (emphasis added).

The language of Rule 9011(a) tracks the language of Rule 11. That is why we have said, "Because the analysis of sanctions is essentially identical under Rules 9011(a) and Rule 11, we will use the terms interchangeably." *In re Grantham Bros.,* 922 F.2d 1438, 1441 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991). I'm concerned that the majority ignores this guidance and writes around *Townsend* in a way that will confirm the views of some of our critics that we are just a series of independent and disconnected panels ignoring the need to create a stable law of the circuit. Moreover, the majority's apostatic claim in justification of its departure from *Townsend,* i.e., that bankruptcy proceedings seldom involve broad policy implications, and that bankruptcy proceedings are subject to manipulation and abuse not typical of civil litigation, is surely not susceptible of reliable verification.

In my view, *Townsend* controls. We should follow its dictates and affirm the BAP's reversal of the sanctions notwithstanding the purpose for which this action was filed, as I will now explain.

A complaint or petition is frivolous if, after reasonable inquiry, a debtor "could not form a reasonable belief that the petition is well grounded in fact and warranted by existing law or a good faith argument for the modification or reversal of existing law." *Rainbow Magazine,* 136 B.R. 545, 551 (9th Cir. BAP 1992). Here, the bankruptcy court sanctioned the debtor because it concluded that case law in the Ninth Circuit clearly established that the debtor's case was filed in "bad faith."[1] Although a number of bankruptcy

---

1. At one point, the bankruptcy court suggested that once it dismissed the case for "bad faith," it must impose sanctions. The bankruptcy court relied on dicta in *In re Chisum,* 847 F.2d 597,

courts had held that using bankruptcy law to appeal a judgment without posting an appeal bond constituted a "bad faith" filing, and although we now hold that the bankruptcy court's assessment of the viability of the petition was correct, *no* court of appeals or BAP decision had yet addressed the issue at the time the petition was filed. Even the bankruptcy courts in this circuit did not all agree on the proper approach. *Compare In re Karum Group, Inc.,* 66 B.R. 436, 437–38 (Bankr.W.D.Wash.1986) *with In re Corey,* 46 B.R. 31, 33 (Bankr.D.Haw.1984). 11 U.S.C. § 1112(b) doesn't explicitly require that petitions be filed in good faith, much less address whether a petition may be filed in order to avoid posting an appeal bond. Under these circumstances, I agree with the experienced members of the BAP: the debtor could reasonably have believed that the petition was warranted by law or a good faith argument for the modification or reversal of existing law. *Cf. Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990) (even though BAP had already adversely decided the issue, the BAP decision's "binding effect is so uncertain that it cannot be the basis for sanctioning a party for seeking a contrary result in a district where the underlying issue has never been resolved"). Thus, I am unable to conclude that *at the time of filing* debtor's petition was frivolous, even though we now hold that it was filed for a purpose inconsistent with congressional intent. Therefore, I believe we are constrained to hold, as the BAP did, that the bankruptcy court abused its discretion in sanctioning the debtor. Accordingly, I would affirm the BAP's reversal of the sanctions.[2]

I do not mean to suggest that lack of authority on point always precludes sanctions. However, when courts are construing equitable limitations not explicitly delineated in the Bankruptcy Code, courts should be wary of imposing sanctions when the law is not well-developed.

---

599 (9th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988), which stated: "If the bankruptcy court determines as a factual matter that a debtor's successive filings were not proposed in good faith, the court must impose sanctions under Bankr.R. 9011." The BAP, however, correctly rejected this reasoning, observing that the term "bad faith" in *Chisum* "must be read as a shorthand expression for the failure to comply with the Rule 9011 standards and not as a reference to the test for the dismiss-

al of bankruptcy petitions." *See also In re Villa Madrid,* 110 B.R. 919, 922 (9th Cir. BAP 1990). In other words, a dismissal for "bad faith" pursuant to 11 U.S.C. § 1112(b) does not automatically lead to Rule 9011 sanctions. *In re Southern Cal. Sound Sys., Inc.,* 69 B.R. 893, 901 (Bankr. S.D.Cal.1987).

2. Of course, in light of our opinion settling this issue, any future petitions similar to the petition in this case would be sanctionable as frivolous.