### In re CHAMELEON SYSTEMS, INC., Debtor.

### No. 03–54784.

United States Bankruptcy Court, N.D. California.

Feb. 20, 2004.

John Wesolowski, Esq., Office of the U.S. Trustee, San Jose, CA, for U.S. Trustee.

James A. Tiemstra, Esq., Miller, Starr and Regalia, Walnut Creek, CA, John W. Easterbrook, Law Offices of Hopkins and Carley, San Jose, CA, for creditors.

Austin K. Barron, Esq., O'Melveny and Myers, Los Angeles, CA, for debtor.

## MEMORANDUM DECISION AND ORDER THEREON RE CHAMELEON SYSTEMS' MOTION TO REJECT REAL PROPERTY LEASE AND NORTECH'S COUNTERMOTION TO DISMISS THE CHAPTER 11 CASE

JAMES R. GRUBE, Bankruptcy Judge.

### I. INTRODUCTION

The debtor, Chameleon Systems, Inc., filed its Chapter 11 petition for the purpose of rejecting the lease with its landlord, Nortech Ventures LLC, and then capping Nortech's damage claim pursuant to § 502(b)(6) of the Bankruptcy Code. Before the court is Chameleon's motion to reject the Nortech lease. In addition, the court has before it Nortech's countermotion to dismiss the Chapter 11 petition under § 1112(b) of the Bankruptcy Code as having been filed in bad faith. For the reasons hereafter stated Chameleon's motion to reject is granted and Nortech's countermotion to dismiss is denied.

### II. FACTUAL BACKGROUND

Chameleon was in the telecom business. Like many companies in this business it found itself in financial trouble in late 2002. The company's December Board minutes reflect that several options were being considered at that time including a sale of the corporation, downsizing and a wind-down and dissolution. The Board decided to continue operations.

Less than two months later the situation had deteriorated. On February 3, 2003, the company's Board of Directors decided to terminate its operations and wind-down its affairs. The corporation would dissolve and liquidate under California law. Sherwood Partners, a consulting firm, was hired to manage the wind-down process, sell the assets of the company, and settle various obligations of the company to its creditors. Bernie Murphy, the senior Vice President of Sherwood, stated in his deposition that Sherwood was retained to liquidate everything and the time frame for completion of the assignment was June 2003.

By the end of February, the only major issues remaining were to sell the company's intellectual property, close its 401(k) plan and negotiate a settlement with Nortech. By May 2003, Sherwood had sold Chameleon's intellectual property and resolved its 401(k) problems. According to Nortech the only remaining issue that prevented the company from completing its dissolution was the Nortech lease.

Chameleon had attempted to surrender possession of the premises to Nortech in March 2003, and to negotiate a termination of the lease but the parties were unable to reach an agreement. Chameleon had a problem. It did not want to continue paying Nortech the monthly rent on the lease which does not expire until May 14, 2006, despite the fact that it had sufficient funds to do so.

Chameleon and Nortech continued their negotiations but were unable to resolve the situation. On July 24, 2003, Chameleon filed a petition under Chapter 11 of the

Bankruptcy Code. Chameleon again attempted to surrender the lease but Nortech rejected the offer.

Under California law Nortech had the option of accepting the surrender of the property and then having the state court fix the damages for the breach of the lease. This would have adjudicated the total damages suffered by Nortech as a result of the breach of the lease. Rather than pursue this course of action Nortech elected its other option, to continue to consider Chameleon its tenant and seek to collect rent on a monthly basis through May 2006. Toward this end, Nortech had filed two lawsuits prior to Chameleon filing its Chapter 11 petition. Nortech's position is that Chameleon is obligated to pay the monthly rent and if there is to be a mitigation of the damages, then Chameleon should seek to find a new tenant for the property. Nortech is entitled to take this position under California law.

Chameleon filed its motion to reject the Nortech lease on July 24, 2003. In response, Nortech filed an opposition to Nortech's motion and a countermotion to dismiss the Chapter 11 case. The court considered and heard oral argument on Nortech's countermotion on January 9, 2004.[1]

The debtor has no income, no employees (except Sherwood partners), and has $4.05 million in its bank accounts. Unsecured debt (other than to Nortech) is less than $10,000. Total obligations to other creditors (mainly tax obligations) are approximately $15,000. As of the petition date, Chameleon admits it has reserves for its full liability under the Nortech lease and all other known and outstanding liabilities, as well as a reserve for unknown liabilities and for legal expenses.

## III. DISCUSSION

The court finds it necessary to first address Nortech's countermotion.

### A. Nortech's Countermotion To Dismiss The Chapter 11 Case

■ In the course of argument the applicability of *PPI Enterprises (U.S.), Inc.,* 228 B.R. 339 (Bankr.Del.1998) was raised. This is a similar case where the debtor filed Chapter 11 for the purpose of rejecting its landlord's lease and then capping the resulting damages under § 502(b)(6) of the Code.

■ The question before the court was whether such a purpose was per se bad faith. The court summarized a variety of statutes in the Code that can have an adverse impact on creditors and noted that § 502(b)(6) is simply one such provision. The court viewed the statute as being clear in its meaning and found there was no equitable determination required for its application to the claim of a landlord. As a result, to the extent there are additional funds available after capping the damages in the landlord's claim, it is not relevant to whom they are ultimately paid. Based on this analysis the court found that the debtor's purpose in filing Chapter 11 was not per se bad faith. The decision was then affirmed on appeal. *PPI Enterprises (U.S.), Inc.,* 324 F.3d 197 (3rd Cir.2003). This court concurs with the decision.

■ Because rejection and the capping of a landlord's claim is not per se bad faith, that purpose may not form the basis for a bad faith finding under § 1112(b). Section 1112(b) provides that a Chapter 11 petition may be dismissed for cause if it appears that the petition was not filed in good faith. *In re Marsch,* 36 F.3d 825, 828 (9th

1. On January 15, 2004, the court made an initial oral ruling denying Nortech's counter- motion to dismiss and deferred ruling on Chameleon's motion to reject.

Cir.1994). Although case law enumerates specific causes for which a case may be dismissed under § 1112(b), the test is whether a debtor is attempting to deter and harass creditors unreasonably, and not attempting to effect a speedy, efficient reorganization on a timely basis. *Id.*

Good faith "depends on an amalgam of factors and not upon a specific fact." *Id.* "The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment .... Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986) (citations omitted). The term good faith may suggest that the debtor's subjective intent is determinative, this is not the case. Instead, the good faith filing requirement encompasses several distinct equitable limitations that courts have placed on Chapter 11 filings. *In re Marsch,* 36 F.3d at 828. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws, which include tactical reasons unrelated to reorganization. *Id.*

The purpose of Chapter 11 reorganization "is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." *In re Cedar Shore Resort, Inc.,* 235 F.3d 375, 379 (8th Cir.2000) (quoting H.R.Rep. No. 595 (1975), *reprinted in* 1978 U.S.C.C.A.N. 6179). The intent of the Code was to provide rules of fairness and equity to govern, adjust, and balance these conflicting rights; to permit the debtor's continued use, enjoyment and exploitation of property and assets essential to rehabilitation, but on terms which protect the rights of others. *In re Victory Constr. Co.,* 9 B.R. 549, 559 (Bankr.C.D.Cal.1981) (citing H.R. 95–595, pp. 339–40; 1978

U.S.C.C.A.N. 5787, 6295–96), *vacated on other grounds,* 37 B.R. 222 (9th Cir. BAP 1984).

Many of the cases discussing good faith involve debtors who are seeking to remain in business. Chameleon discusses at great length that liquidation is a valid purpose in filing Chapter 11, and the cases cited by Chameleon support this proposition. *See, e.g., In re Klein/Ray Broad.,* 100 B.R. 509, 511 (9th Cir. BAP 1987). The Code also recognizes liquidation in that § 1123(b)(4) provides that a reorganization plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."

While the reorganization of an ongoing business or the liquidations of assets are valid purposes for filing Chapter 11, neither is present here in the traditional sense. Chameleon has no ongoing business and Sherwood partners completed the liquidation of assets prior to the filing.

The debtor's purpose in filing was to reject the Nortech real property lease and the underlying facts present the court with a novel question. The court's inquiry must focus on whether a debtor is attempting to deter and harass creditors unreasonably, and not attempting to effect a speedy, efficient reorganization on a timely basis as discussed in the *Marsch* decision.

Nortech argues that the debtor has acted in bad faith because the filing is just a litigation tactic that Chameleon is using to avoid its obligation under the lease. It has enough money to pay the landlord's claim through May 2006. Nortech filed a proof of claim with the court calculating that it is owed $4,368,867.88 through May 2006. The fact that Chameleon has enough money to pay this claim may well be the reason

Nortech declined to accept the surrender of the property.

Chameleon, on the other hand, argues that it is just trying to complete it liquidation, wind up its affairs, and dissolve. It has been unable to do so because Nortech will not accept a surrender of the property and negotiate the amount due. As a result, the debtor is in a position of being forced to continue in existence for another two to three years for the sole purpose of continuing to be the lessee on the Nortech property, insuring and protecting it, and paying Nortech in excess of $90,000 a month while not using it.

Given the choices Chameleon chose to file Chapter 11, reject the lease and cap Nortech's claim under § 502(b)(6). The result is that Nortech will be paid approximately $1,816,000.00 on its capped claim and Chameleon will complete its dissolution without having to pay the cost of having to stay in existence for the next two to three years. At the time the motion was argued, the court described the debtor's request as the plea of the owners of the business to "go home," that is, the desire of a failing business to wind-down and dissolve and not be forced to continue in business for the sole benefit of its landlord.

It is unfortunate that the parties were not able to resolve their differences outside of bankruptcy. Somewhere between the capped claim of $1,816,000.00 and the total claim of $4,368,867.68 an agreement should have been reached. But courts exist for those cases where agreement can not be reached.

The court also recognizes that the resolution of this dispute involves a possible windfall no matter what the decision. If the court decides in favor of the debtor and allows the bankruptcy to continue the claim will be capped and it appears that additional funds will flow to shareholders of the debtor. On the other hand if the case proceeds under California law, the debtor is presented with a Hobson's choice. Chameleon must stay in existence for another two to three years, or pay Nortech now whatever it demands to terminate the lease regardless of what might happen in terms of mitigation later in 2004, 2005 or 2006. In the latter case, if the property is rented in the next two and a half years for any amount the landlord will receive a windfall and the debtor will not be in existence to complain. Either way there is the possibility of a windfall.

As a result of these unusual facts, the court's focus is on the question of whether the use of Chapter 11 in these circumstances represents a legitimate use of the Bankruptcy Code. After considering all the evidence and argument, the court's answer to the question is yes. If this case had been filed under Chapter 7 we would not be having this discussion. *In re Padilla,* 222 F.3d 1184 (9th Cir.2000) (holding that bad faith does not per se constitute cause for dismissal of an individual's case under § 707(a) of the Bankruptcy Code). Failed businesses regularly file for Chapter 7 turning the wind-down over to a trustee. The owners provide the pertinent information to the trustee and "go home." The fact that the business is solvent does not change that right. The fact that this petition was filed under Chapter 11, and not Chapter 7, similarly does not change the right to terminate operations completely and "go home."

### B. Chameleon's Motion To Reject The Lease

The Court notes that since filing its motion to reject the lease, Chameleon has presented the court with an additional argument that the lease was deemed rejected by operation of law when the sixty-day period under Bankruptcy Code § 365(d)(4)

ran. Thus, § 365(a) does not apply and court approval is not required. *In re Arizona Appetito's Stores, Inc.,* 893 F.2d 216, 219 (9th Cir.1989). However, Chameleon seeks to have the rejection effective as of the date it filed the motion to reject, July 24, 2003. *Arizona Appetito's* did not address the issue of whether rejection could be ordered retroactively when it occurs by operation of law.

Because Chameleon seeks to have the rejection effective to a date prior to the expiration of sixty-day period under § 365(d)(4), the court will consider the merits of Chameleon's motion to reject. In considering the business judgment test, the court finds that if Chameleon's motion to reject is denied, it will be in the exact same position it would be in had the court dismissed the case.

Chameleon would be restrained in its ability to wind-down its affairs due to the landlord's refusal to accept a surrender of the lease. This will only prolong the administration of the estate and the wind-down of this failed company. There is no reason Chameleon should remain in operation for the sole purpose of servicing this lease. For that reason the court approves Chameleon's motion to reject the lease. However, the court approves rejection effective as of July 30, 2003. At the initial hearing on the motion to reject, Nortech had agreed that if the court ultimately approved rejection of the lease, it would stipulate that rejection would be effective no later than July 30, 2003.

## IV. CONCLUSION

For the reasons stated herein, Nortech's countermotion to dismiss the case is denied. In addition, for the reasons stated herein, the court grants Chameleon's motion to reject the lease effective as of July 30, 2003.