**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                    )    BAP No.   CC-16-1210-TaFC
                                          )
IQBAL MAHMOOD,                            )    Bk. No.   2:15-bk-25281-DS
                                          )
                 Debtor.                  )
_____         )
                                          )
IQBAL MAHMOOD,                            )
                                          )
                 Appellant,               )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
ADNAN KHATIB,                             )
                                          )
                 Appellee.                )
_____         )

Argued and Submitted on February 23, 2017
at Pasadena, California

Filed – March 17, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

Appearances:    Michael R. Totaro of Totaro & Shanahan argued for
                appellant; Janelle M. Dease of Borchard &
                Callahan, APC argued for appellee.

Before:   TAYLOR, FARIS, and CLEMENT,[**] Bankruptcy Judges.

_____

[*]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]  The Hon. Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

## INTRODUCTION

Chapter 11[1] debtor Iqbal Mahmood appeals from the bankruptcy court's dismissal of his bankruptcy case as a bad faith filing. We AFFIRM the bankruptcy court.

## FACTS[2]

A California appellate court once remarked: "Understanding the complex series of events that led to this litigation is necessary to frame the current appeal, and to explain our holdings." Mahmood v. Sharif, No. B175483 (Cal. Ct. App. July 20, 2005). That was in 2005. Twelve years — and at least two more appellate decisions — later, we meet an enhanced challenge in explaining the long history of the underlying disputes. Thankfully, the parties agree on most basic facts.

**Pre-bankruptcy events**. Debtor Iqbal Mahmood immigrated to the United States in 1970. In 1981, he and Fehmida, his wife at the time, purchased a mixed-use property in Cerritos, California (the "Property"). Debtor has apparently lived and worked there ever since.

In 1988, Adnan Khatib commenced a state court lawsuit against Debtor and others and sought recovery based on alleged slander. In April 1991, Debtor quitclaimed the Property to Fehmida. Shortly thereafter, Khatib obtained a $542,159

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

judgment. And only three months thereafter, Fehmida filed for divorce. Khatib and Debtor then entered into a settlement agreement to satisfy the judgment; but concord did not follow.

In September 1992, Khatib again sued Debtor, among others; he alleged four causes of action: (1) fraudulent conveyance; (2) breach of contract; (3) fraud; and (4) conspiracy. As a result of discovery sanctions, Khatib eventually obtained a default judgment on the fraudulent conveyance and breach of contract causes. The judgment set aside all transfers of the Property after January 27, 1988, deemed title held by Debtor and Fehmida as community property, enjoined Debtor from transferring the Property, and awarded Khatib money damages on the breach of contract cause.

Khatib then recorded an abstract of judgment. Debtor appealed. In 1996, the California Court of Appeal affirmed the fraudulent conveyance aspect of the judgment but reversed and remanded for the trial court to recalculate the damages on the breach of contract claim. The trial court entered a new judgment the next year but erroneously assessed damages on the fraud cause of action. Debtor again appealed, and the California Court of Appeal again affirmed, albeit while also modifying the judgment to reflect that the damages award was based on the contract, not the fraud, cause of action.

At appropriate intervals Khatib renewed his judgment: once when he calculated the amount due as $1,256,537.37; and then when he calculated the amount due as $2,029,423.50. Debtor disputed this second renewal, but Khatib prevailed at both the trial and appellate levels.

3

In January 2013, Khatib applied to have the Property sold by writ of execution. In response, Debtor's daughter, as trustee for a trust, filed a lawsuit for quiet title, declaratory relief, and equitable relief: she claimed that the trust had title to the Property, based on a series of transfers going back to the April 1991 transfer from Debtor to Fehmida. The state court ruled in Khatib's favor in her action, an appeal followed, and the appellate court affirmed.

In July 2015, Khatib again sought to sell the Property by writ of execution. Debtor was served with an "Application for Issuance of an Order to Show Cause Why an Order for Sale of Dwelling Should Not Issue"; it was set for hearing on October 6, 2015.

**Debtor's bankruptcy petition.** But on October 4, 2015, Debtor filed a voluntary chapter 11 petition. On Schedule A, he listed two pieces of real property, the Property and vacant land in Chico, CA. He valued his interest in them at $275,000 and $44,000, respectively.

He listed four secured creditors on Schedule D, marking all as "disputed": Adhan Khatib [sic], 1994, $50,000; Butte County Tax Collector, 2014, $2,000; James F. McGee, 1994, $50,000; and Los Angeles County Tax Collector, 2015, $5,923.70. He then listed six unsecured creditors on Schedule F, again marking all as "disputed." These included: Khatib, 1994, $1,422,034.20; McGee, 1994, $1,422,034.20; Mohammad and Rukhsna Sharif, 1994, $195,000; Mohammad S. Tremzai, 1992, $50,000; Rutan & Tucker, 2012, $10,000; and Shaheen Iqbal, 1992, $45,000.

Debtor also has a litigious history with Mohammad Sharif,

4

Rukhsana Sharif, and M. Sharif (the "Sharifs"). The Sharifs obtained a money judgment against Debtor in 2001. Debtor appealed, but the Sharifs prevailed.

Debtor almost immediately filed a post-petition motion to value the Property, asserting it was worth $275,000. Khatib opposed. The bankruptcy court eventually valued the Property at $550,000.

Debtor also promptly commenced an adversary proceeding against Khatib and the Sharifs to determine the existence, validity, and priority of the various liens.

Debtor then submitted a "corrected" disclosure statement and a proposed plan of reorganization. As described in the disclosure statement, the plan proposes to take the Property's $550,000 value, subtract a $175,000 homestead exemption, and treat the secured claims as secured up to $375,000. The plan then pays secured claims over 7 years at 3% interest. The deficiency claims are treated as unsecured claims to receive a 2% dividend, without interest, in equal monthly installments over 84 months. The disclosure statement also represents that Debtor had averaged net monthly income of $3,758.94 in the six months since the petition was filed.

Khatib responded to Debtor's bankruptcy efforts with a motion to dismiss the bankruptcy case as a bad faith filing. After canvassing the parties' history and discussing various factors, Khatib argued that "totality of the circumstances reveals that Debtor is fraudulently using bankruptcy as a way to appeal and avoid the Judgment that allows Khatib to enforce against the [Property]." He urged the bankruptcy court to find

"that Debtor acted in bad faith in filing his petition." He then argued that dismissal would serve the best interest of all creditors and the estate.

Debtor opposed. Among other things, he argued that if the court found cause to dismiss, there were unusual circumstances that established that neither dismissal nor conversion was in the best interests of creditors and the estate: he related his discovery that the liens and their respective priority was unclear and needed judicial determination. His adversary proceeding, he suggested, was a quick way to resolve the dispute. He added: "If Debtor had to choose he would argue dismissal would provide a better option for the creditors and the estate as their claims would not be reduced further by trustee fees and their attorney's fees."

The bankruptcy court heard the matter, entertained oral argument, and ruled from the bench. It clarified that bad faith was grounds for dismissal under § 1112(b). And it identified five relevant factors:

> whether the debtor has only one asset; whether the debtor has an ongoing business to reorganize; whether . . . there [are] unsecured creditors; whether the debtor has any cash flow or sufficient source of income consisting a plan; and finally, whether this is essentially a case that is a two-party dispute that is capable of being adjudicated in state court as opposed to a bankruptcy court.

It then discussed each of the factors. From them, it concluded "that we have . . . a pretty clear case for dismissal based on bad faith." Finally, the bankruptcy court decided: "I don't believe that appointment of a trustee or an examiner in this case would be an appropriate option either because there's no

6

need for any sort of investigation, there's no need for another party to come in to operate a business or to oversee the conduct of a case." It then entered an order dismissing the case. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it dismissed Mahmood's chapter 11 petition.

## STANDARDS OF REVIEW

"We review de novo whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994). We review for abuse of discretion the bankruptcy court's decision to dismiss a chapter 11 case as a "bad faith" filing. Hutton v. Treiger (In re Owens), 552 F.3d 958, 960 (9th Cir. 2009); Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 611 (9th Cir. BAP 2014). We apply a two-step test to determine whether the bankruptcy court abused its discretion. In re Sullivan, 522 B.R. at 611 (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then we review for clear error the bankruptcy court's findings of fact. Id. (citing cases). "We must affirm the bankruptcy court's fact findings unless we

7

conclude that they are illogical, implausible, or without support in the record." Id. A factual determination is clearly erroneous "if it was without adequate evidentiary support or was induced by an erroneous view of the law." Id.

## DISCUSSION

Section 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). If cause is established, the decision to convert or dismiss the case falls within the bankruptcy court's discretion. In re Sullivan, 522 B.R. at 612. If a bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1), (b)(2); In re Sullivan, 522 B.R. at 612.

Debtor concedes that a determination that a bankruptcy petition was filed in bad faith constitutes cause under § 1112(b). In re Marsch, 36 F.3d at 828. We now turn to whether the bankruptcy court's dismissal was an abuse of discretion.

**A. The bankruptcy court properly applied the correct legal standard.**

As discussed in more detail below, the bankruptcy court

8

weighed various factors before finding that Debtor filed his chapter 11 petition in bad faith. On appeal, Debtor argues that the bankruptcy court misapplied the correct legal standard because it failed to consider the totality of the circumstances when it considered only some, but not other, factors.

We disagree. This Panel (and others) have elucidated helpful circumstantial factors that might indicate bad faith when considering a totality of the circumstances. The bankruptcy court did not have to consider all the factors; nor did it have to weigh them equally. A bankruptcy court may find one factor dispositive. Indeed, a bankruptcy court may find bad faith even if none of the factors are present.

Here, the bankruptcy court recited and considered factors this Panel has endorsed. See St. Paul Self Storage Ltd. P'ship v. Port Auth. (In re St. Paul Self Storage Ltd. P'ship), 185 B.R. 580 (9th Cir. BAP 1995). In St. Paul, we remarked:

> To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether:
>
> > (1) the debtor has only one asset;
> > (2) the debtor has an ongoing business to reorganize;
> > (3) there are any unsecured creditors;
> > (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and
> > (5) the case is essentially a two party dispute capable of prompt adjudication in state court.
>
> See In re Stolrow's, Inc., 84 B.R. [167, 171 (9th Cir. BAP 1988)]. Generally speaking, when factors such as these indicate that a debtor is unreasonably deterring or harassing creditors rather than attempting a speedy and feasible reorganization, the court may conclude that the petition has been filed in bad faith and dismiss it.

*Id.* at 582–83 (some citations omitted). The list is admittedly not exhaustive; an even earlier Panel decision set forth a more expansive list of eight factors. *See* In re Stolrow's, Inc., 84 B.R. at 171. The bankruptcy court could have discussed all eight circumstantial factors; but it was not obliged to. Indeed, in St. Paul the Panel affirmed a bad faith finding based on the more limited list of five factors — the precise factors the bankruptcy court, here, considered.

Debtor also believes the bankruptcy court should have evaluated factors that he raised (factors that do not appear on even the longer list). But we are not persuaded that the bankruptcy court ignored them.[3] First, Debtor emphasizes that his insolvency is relevant to the case and that the "disinclination to examine debtor's overall financial status was a factor in an erroneous conclusion [that] the Sullivan case was filed in bad faith." Aplt's Opening Br. 14. As this panel and the Ninth Circuit have observed, a debtor's financial status is relevant. In re Sullivan, 522 B.R. at 615 (citing In re Arnold, 806 F.2d at 939). But Sullivan is distinguishable; there, the bankruptcy court erroneously viewed the debtor's alleged insolvency as a "non-issue" and inappropriately limited its examination of the debtor's financial status. *Id.* Here, the bankruptcy court did consider Debtor's financial status (i.e., his assets, cash flow, liabilities, etc.), and it did not erroneously determine that Debtor was solvent.

---

[3] Debtor raised them in his papers. And the bankruptcy court informed counsel, on the record, that "I have reviewed the papers."

10

Second, Debtor contends that "the very fact" that he has been diligently "working toward reorganization is inconsistent and incongruous with this being a 'bad faith filing.'" Aplt's Opening Br. at 14. But Debtor is not the first to raise this argument; in St. Paul, the debtor also argued that it did not file its bankruptcy petition in bad faith, and to "support this contention, [d]ebtor refers to the fact that it filed a proposed disclosure statement and plan, filed all monthly operating reports, and paid all quarterly fees to the United States Trustee." 185 B.R. at 583. The St. Paul Panel was not convinced: "However, notwithstanding Debtor's reverence for form, the substance of this case indicates that the bankruptcy court's finding of bad faith was not clearly erroneous nor did it abuse its discretion when dismissing the case." Id. We are similarly unimpressed with Debtor's form over substance argument. Put bluntly: if a debtor's timely filing all operating reports, complying with various reporting requirements, and "working toward reorganization" rebutted indicia of bad faith, then every debtor who complied with the bare minimum of procedural requirements would be immunized from a bad faith finding.

Last, Debtor twice argues that filing bankruptcy to "save equity in one's home" is a legitimate reason for filing bankruptcy and then suggests that his motivation for filing is similar. See Aplt's Opening Br. at 13, 15. It is a legitimate reason, except Debtor has no equity to save. He wants to preserve his homestead exemption. But he does not need bankruptcy protection to do so.

11

In sum, we conclude that the bankruptcy court properly considered the totality of the circumstances; it listed appropriate factors and from those factors found bad faith.

**B.   The bankruptcy court's "bad faith" finding was not clearly erroneous.**

"We must affirm the bankruptcy court's fact findings unless we conclude that they are illogical, implausible, or without support in the record." In re Sullivan, 522 B.R. at 612. "We may view a factual determination as clearly erroneous if it was without adequate evidentiary support or was induced by an erroneous view of the law." Id.

The bankruptcy court found that Debtor's petition was filed in bad faith. It based this, in part, on a finding that Debtor "is using this bankruptcy as a litigation tactic in connection with his disputes with Mr. Khatib and using bankruptcy as a litigation tactic or as a grounds to delay creditor's collection . . . ." Debtor argues that the bankruptcy "court failed to explain what that 'litigation tactic' was." Aplt's Opening Br. at 25. He reasons: "This was just collection efforts to sell Mahmood's home and place of business so no actual 'tactic' just following a viable procedure to seek to pay debts and retain his property." Aplt's Opening Br. at 26. We disagree.

The evidence before the bankruptcy court reflected: in 1991, Khatib obtains judgment, Debtor and Khatib later settle, but Debtor fraudulently conveys the Property; Khatib obtains a second judgment, Debtor appeals, judgment affirmed in part remanded in part, new judgment, Debtor appeals, judgment affirmed; Khatib renews the judgment; Khatib renews the judgment

12

again, Debtor appeals, renewed judgment affirmed; Khatib begins the sale process, Debtor's daughter brings quiet title action, Khatib prevails at trial, Debtor's daughter appeals, judgment affirmed; finally, Khatib renews the sale process, Debtor files bankruptcy. We recognize Debtor's belief that, along the way, he scored minor victories. But the bankruptcy court's finding that Debtor was using the bankruptcy petition as the latest in a decades-old campaign to delay Khatib's collection efforts was not clear error.

For the sake of completeness, we also address Khatib's more specific arguments. Debtor disputes the bankruptcy court's analysis on nearly every factor; he argues that the bankruptcy court's factual findings were clearly erroneous.[4]

**Whether Debtor has only one asset**. The bankruptcy court concluded that the case was "essentially a one-asset case." It observed that Debtor "clearly filed this case to protect this particular asset." It acknowledged that there were other items on the schedules, but noted that they were "of de minimis value." On appeal, Debtor argues that a case is either a single asset case or not; accordingly, this case cannot be a "one-asset" case because Debtor has other assets: he co-owns a parcel of vacant land and has postpetition income. But as Debtor concedes, the bankruptcy court did not find that Debtor only had

---

[4] Debtor does not, however, dispute the bankruptcy court's conclusion that the "ongoing business to reorganize" factor was not particularly useful: "[T]he debtor's practice right out of his home it's -- it appears to be a relatively straightforward one. It doesn't appear the bankruptcy is to be used as a tool to reorganize the business."

13

one asset; it looked at the schedules, acknowledged that Debtor had other assets, but concluded that they were negligible. Although the bankruptcy court did not explicitly identify Debtor's postpetition income as an asset, we are not persuaded this would have altered the calculus. Accordingly we conclude that the bankruptcy court's finding that this was "essentially" a one-asset case was not clearly erroneous.

**Whether there are any unsecured creditors**. The bankruptcy court found that there were few, if any, true unsecured creditors in the case. On appeal, Debtor acknowledges that some of the creditors listed on the schedules did not file proofs of claims, but he argues that the court should look at the schedules at the time of filing. Debtor also contends that the bankruptcy court ignored the natural result of claim bifurcation: all but $375,000 of the "secured" claims would be treated as unsecured. In reaching its conclusion, the bankruptcy court looked at Debtor's initial schedules, Debtor's proposed amended schedules, and the claims register. There was no clear error in its conclusion — even if Debtor's bankruptcy plan would treat some claims as undersecured.

**Whether Debtor has any cash flow or sources of income to sustain a plan of reorganization**. The bankruptcy court found: "it seems to me that the debtor is not likely to be able to fund the proposed plan while also funding basic needs of his own life." The bankruptcy court looked at the proposed plan and disclosure statement; based on the information in them, it calculated that Debtor would have about $198 per month left over after expenses and plan payments. Then it compared the income

14

reported in the disclosure statement (based on the six months since the petition was filed) with Debtor's initial Schedule I. Based on Schedule I, Debtor could not cover the proposed plan payments. Hr'g Tr. 15:24-16:3. Last, it acknowledged that Debtor intended to rely on family members for emergencies but concluded that there was no evidence "that's been provided by the debtor as to specifics regarding those contributions or under what circumstances they would be made."

On appeal, Debtor urges that the income disparity between the disclosure statement and schedules was a positive development because it showed that Debtor had increased his income by nearly $500 per month since the petition was filed. And he argues that the bankruptcy court misread the submitted declaration because it indicated that Debtor's son-in-law was committed to providing at least $1,000 or more a month to Debtor.

We hesitate to discuss this factor at length. This was not a hearing to confirm the plan or approve the disclosure statement. See In re Sullivan, 522 B.R. at 617-19 (concluding that a bankruptcy court's determination that debtor could not file a confirmable plan may be premature at an early stage in the case). But Debtor had submitted a proposed plan and disclosure statement and the case was well developed, so the bankruptcy court could consider them. In doing so, the bankruptcy court looked at the plan's feasibility, Debtor's admitted need for outside funding, and the declaration attesting to outside funding. We recognize that, with some clarification (and assuming his son-in-law's cooperation), Debtor might have

15

corrected any deficiency in the offered declaration. Nevertheless, we conclude that the bankruptcy court did not clearly err in finding that Debtor did not have sufficient cash flow to sustain a reorganization plan — any increase in the interest rate paid to creditors, litigation costs, or other changes to the plan would have made it difficult, if not impossible, for Debtor to make plan payments.

**Whether the case is essentially a two-party dispute capable of prompt adjudication in state court.** The bankruptcy court found:

> Finally, this is a two-party dispute and while there are . . . maybe a couple of unsecured creditors, obviously we have the Sharifs, ultimately it really appears to me that this is a dispute between the debtor and Mr. Khatib and this is a dispute that has been going on since I believe about 1991. . . . And . . . . there's . . . a story to this case and it all indicates that there is a history between these two parties of litigation with a number of findings that are certainly not favorable to the debtor. And we have the debtor in this case now making arguments that appear to be exactly the same as arguments that were made unsuccessfully and decided against the debtor in other forums.

It later added: "I think the record is clear that this is . . . a two-party dispute that is better resolved and, in fact, is likely already largely been resolved outside of this court." After the bankruptcy court's ruling, Debtor's counsel interjected; the bankruptcy court then clarified: "[Mr. Sharif] is one of the two parties in the other -- in the two-party dispute and I did mention the Sharifs as well. But even if that factor . . . did weigh in favor finding that this was a case that was filed in good faith, I think that the other factors very much outweigh that one factor."

16

Debtor disagrees; but his position is not persuasive.

First, he rightly argues that the presence of a two-party dispute does not per se constitute a bad faith filing. But here the bankruptcy court also found that the dispute could be resolved outside the bankruptcy court's jurisdiction; Debtor does not argue otherwise.

Second, Debtor emphasizes that he does not intend to challenge the judgments — instead, the dispute is about the judgment liens. He urges that his filing bankruptcy has leveled the playing field because, after reviewing the proofs of claim, he discovered "what appears to be a problem with Khatib's current claimed judgment lien which must be resolved before any efforts to sell the Property as the Sharifs may have liens senior to Khatib's." Aplt's Opening Br. at 22. But he has not "leveled" the playing field;[5] he identifies no bankruptcy tool that would be uniquely helpful. At best, he has identified that the Sharifs, and not Khatib, may have a senior interest. This does not require the bankruptcy court's special expertise; the state court is more than competent to resolve the dispute.

Third, Debtor's hyper-technical assertion that there were other parties and properties involved in his and Khatib's history, although true, misses the mark. Khatib's bringing actions against other parties does not transform his dispute with **Debtor** into a multi-party action. That said, the description of this as a two-party dispute is not technically

---

[5] Nor is this postpetition discovery particularly relevant to whether Debtor filed the petition in good faith.

17

apt. The bankruptcy court acknowledged this when Debtor's counsel pointed it out at the hearing; but it reasoned that, even absent this being a two-party dispute, it would still find that the petition was filed in bad faith. We agree.

In short, this was an at most three-party dispute involving a single asset. Debtor's interest is ostensibly to protect his homestead exemption; but by filing bankruptcy, Debtor coincidentally manages to retain possession and further forestall the Property's sale.

In sum, we conclude that the bankruptcy court's finding that Debtor filed the bankruptcy petition in bad faith was not clearly erroneous.

**C. Any error in failing to consider the interests of all creditors when deciding to dismiss or convert the case was harmless.**

On appeal, Debtor argues that the bankruptcy court abused its discretion by: (1) not considering the best interests of all creditors when it concluded that appointment of a trustee or examiner was not appropriate; (2) not weighing the best interests of all creditors and the estate before dismissing the case; and (3) not considering Debtor's argument that unusual circumstances existed establishing that dismissal and conversion are not in the best interests of creditors or the estate. Debtor chiefly points to the lien priority issue (i.e., his allegation that Khatib may not have a first priority lien) and consequently urges that the bankruptcy court failed to properly consider the interest of all creditors (i.e., the Sharifs, who may now be in a first position) and the estate.

But Debtor waived the first two arguments. At oral

18

argument, Debtor's counsel conceded that, if Debtor stated below that he preferred dismissal, Debtor waived these arguments. Debtor did, in fact, concede that he would prefer dismissal if put to the choice. What's more, no party below argued against dismissal in favor of another option.

That leaves the third point: Debtor's contention that the bankruptcy court did not even consider his argument that the lien priority issue was an unusual circumstances. We disagree; Debtor's counsel apprised the court of the adversary proceeding's status and his interest in having Judge Ahart mediate the matter. Despite this, the bankruptcy court found that Debtor and Khatib's dispute, including the potential senior interests of the Sharifs, could be better resolved outside the bankruptcy court. Further, disputes over liens and their respective priority are not "unusual circumstances." See In re Prod. Int'l Co., 395 B.R. 101, 109 (Bankr. D. Ariz. 2008) ("Section 1112(b) does not define 'unusual circumstances.' However, the phrase contemplates conditions that are not common in chapter 11 cases."). Although the bankruptcy court did not specifically address this issue under the rubric of unusual circumstances, we conclude that any error was harmless.

**CONCLUSION**

Based on the foregoing, we AFFIRM.

19