**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.   NV-15-1349-KiLDo |
| | NV-15-1360-KiLDo |
| GLOYD GREEN and GAIL HOLLAND, | (Related appeals) |
| Debtors. | Bk. No.   14-15981-abl |
| GLOYD GREEN; GAIL HOLLAND, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| HOWARD FAMILY TRUST DATED AUGUST 21, 1998, | |
| Appellee. | |

Argued and Submitted on October 21, 2016,
at Las Vegas, Nevada

Filed - November 9, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding

Appearances:   Christopher Burke argued for appellants; Jerimy L. Kirschner argued for appellee.

Before:   KIRSCHER, LAFFERTY and DORE,[2] Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value.  See 9th Cir. BAP Rule 8024-1.

[2]   Hon. Timothy W. Dore, Bankruptcy Judge for the Western District of Washington, sitting by designation.

Debtors Gloyd Green ("Green") and his wife Gail Holland appeal an order converting their chapter 11[3] case to chapter 7 for bad faith under § 1112(b). Debtors also appeal an order estimating and temporarily allowing for voting purposes the claim of creditor Howard Family Trust dated August 21, 1998 ("Trust"). We AFFIRM the conversion order. Consequently, we DISMISS the appeal of the claim estimation order as MOOT.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Prepetition events**

The Trust was created in 1998 by Oscar Brannon Howard, Jr. and his wife, who had both passed away by late 2005. They were survived by their only son and beneficiary, Oscar Brannon Howard, III. Green, a family friend, was named successor trustee. He became trustee of the Trust on November 5, 2005, upon the passing of Howard, Jr. Green was also a beneficiary under the Trust.

**1. The probate action**

Suspecting possible misappropriation of Trust assets, in September 2008, Truman Holt, Mrs. Howard's brother and also a Trust beneficiary, brought a probate action against trustee Green, seeking to compel Green to account for and report information about Trust assets ("Probate Action" 08P063929).

In October 2008, Green was ordered to provide an inventory and accounting of income and expenses from November 5, 2005 through October 2008, and copies of tax returns for the same

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

period. Green was also ordered to pay Holt's attorney's fees and costs or to show cause why he should not ("2008 Order").

In response, Green produced a two-page handwritten document purporting to list the assets, income and expenses of the Trust for the required time period ("2008 List"). The 2008 List did not provide all information required under the 2008 Order, lacked any substantive detail or supporting documentation or other corroborative information, omitted Trust assets and provided no information about which Trust assets Green claimed to have administered.

In March 2009, Holt moved to have Green removed as trustee for cause, citing Green's continuing failure to account for Trust assets. At the hearing, the probate court removed Green and appointed Holt as trustee. Green failed to respond to the removal petition or appear at the hearing.

In an order filed in April 2009, the probate court found that Green, while acting as Trustee, failed to: (1) provide an adequate inventory and accounting of Trust assets and their values; (2) provide details for distributions purportedly made to Trust beneficiaries or details of any income received by the Trust; (3) pay Holt's attorney's fees and costs as ordered; and (4) provide any Trust tax returns. Green was ordered to turn over to newly appointed trustee Holt: (1) complete copies of the Trust agreement and all amendments thereto;[4] (2) copies of all Trust

---

[4] Prior to his removal as trustee, Green had produced an undated, but signed and notarized, two-page document entitled Amendment of Trust ("Amendment"). Green claimed Howard, Jr. made the Amendment just prior to his death. The Amendment purports to
(continued...)

-3-

records during the term of his administration, including tax returns, check registers, canceled checks and information regarding Trust investments; and (3) copies of all deeds, mortgages, deeds of trust, promissory notes and the like related to Trust activities.

In response to the April 2009 order, Green sent a list of Trust assets and liabilities as of November 5, 2005, by email to Holt's attorney, Harriet Roland, in June 2009 ("2009 List"). The 2009 List differed materially from the 2008 List, stating that the Trust held $612,000 in assets, almost a two-fold increase from Green's previous accounting.[5]

In November 2009, Holt, individually and on behalf of the Trust, moved to enforce the Trust's forfeiture clause and compel Green to forfeit any right to property or benefits received from the Trust based on his malfeasance. Green did not oppose the motion. After a hearing and finding that notice was proper, the probate court entered an order directing that Green forfeit his beneficial interest in the Trust or any rights to use or keep Trust property ("Forfeiture Order"). The Forfeiture Order

_____

[4](...continued)
modify the distribution of the Trust's residuary estate. The names of Trust beneficiaries had been redacted from the document. Holt alleged that Trust beneficiaries were previously unaware of the Amendment's existence and claimed that Green never mentioned it before the Probate Action. The purported Amendment apparently caused further litigation between Trust beneficiaries, who ultimately settled their dispute and decided that Holt and the Howards' son would investigate any malfeasance by Green.

[5] Holt and the Trust contended that a later investigation revealed the 2009 List still under-reported Trust assets and income by at least $1 million. The bankruptcy court found, however, that the record did not substantiate a loss of Trust assets of that magnitude.

-4-

contains findings establishing that Green had violated the terms of the Trust and had failed to carry out properly his duties as trustee. Green was also ordered "to return any and all prior or current property of [the Trust] previously taken by [Green] from the Trust" to Holt. Green did not appeal the Forfeiture Order.

In March 2012, Holt, on behalf of the Trust, filed a notice of taking Green's deposition for May 3, 2012. Green was also summoned by the probate court to appear at a hearing on May 11, 2012, and show cause why he should not be held in contempt for failure to comply with the October 2008 and April 2009 orders. Green failed to appear for the deposition or appear at the May 11 hearing.

On September 6, 2012, the probate court issued a second citation for Green to appear at a hearing on September 21, 2012. Green failed to appear for the September 21 hearing.

## 2. The civil action

In August 2012, Holt/Trust filed a complaint against Debtors and their revocable trust alleging ten causes of action, including conversion, embezzlement, breach of fiduciary duty, civil theft and fraud, both actual and constructive ("Civil Action," A-12-667650-C). The complaint further alleged that Holland "knowingly accepted the benefits of, and participated in, Green's unlawful conversion of Trust assets."

Debtors never answered the complaint. Holt/Trust then sought default entries against Debtors; the state court entered defaults against Debtors and their revocable trust on January 31, 2013.

The state court held a prove-up hearing to establish damages about 18 months later on May 22 and August 28, 2014. Green

appeared pro se at both sessions of the prove-up hearing, but because the May 22 session started earlier than scheduled, Green missed most of it. Prior to his arrival, a forensic investigator for the Trust, Jayne Klein, was admitted as an expert witness and testified about her findings regarding the alleged misappropriation of Trust assets by Debtors.

At the later prove-up session on August 28, Green cross-examined Klein, presented documentary evidence and testified under oath. In summary, Klein testified that she had analyzed hundreds of transactions and transfers between multiple accounts held in the names of Debtors and the Trust. Her analysis also extended to several home purchase and sale transactions involving the Debtors, as well as transactions involving several individual deeds of trust. Klein concluded that at least $638,427.07 "was either stolen or taken or lost by the [Debtors]." Klein opined that more Trust assets could have existed, but Green's refusal to assist in her investigation made finding any additional assets problematic.

During the August 28 session of the prove-up hearing, the state court commended Holt/Trust's tracing of Trust assets, stating that "[t]hey did the best job of tracing in a fraudulent case that I have seen in almost 40 years of doing this[.]" The court further noted:

> Mr. Green, I have gone through this amended application and looked at the various transactions that they have done, that they have examined, to show me you're a thief. You have stolen substantial amounts of money from this trust over a period of years. The total amount that they have compiled, and I believe it to be accurate, is $638,427.07[.]

In conclusion, the court stated that a money judgment would be entered for $638,427.07, with a like amount for punitive damages,

-6-

and equitable relief in the form of a constructive trust and equitable liens on Debtors' property. Green asked the court about filing an appeal; the court told him to seek counsel.

Holt/Trust counsel submitted on August 28, 2014, a Proposed Judgment consistent with the relief announced by the state court at the conclusion of the hearing. It provided for a constructive trust over Debtors' home; an equitable lien on Debtors' rental property and vacant land they owned; an equitable lien on Debtors' personal property; actual damages of $638,427.07; punitive damages of $638,427.07; and costs. The Proposed Judgment, however, was not entered because of Debtors' bankruptcy filing six days later.[6]

**B.    Postpetition events**

Debtors filed a skeletal chapter 11 case on September 3, 2014. They had not previously filed for bankruptcy. They had also historically paid their debts as they became due, including paying off credit card balances every month. The initial schedules filed two weeks later showed that Debtors owned free and clear all three of their real properties valued at $455,000. They also had nearly $1 million in their retirement accounts. They had no secured creditors or unsecured priority creditors.

Absent Holt/Trust's scheduled "unsecured" claim of $1.3 million, Debtors had only four other unsecured creditors: three credit card companies collectively owed $5,100; and

---

[6]    The Proposed Judgment was subsequently signed by the state court on September 10, 2014, after Debtors' bankruptcy petition had been filed, but it was never docketed. Nonetheless, the Proposed Judgment was the subject of a separate motion by Debtors for contempt sanctions against Holt/Trust for violation of the automatic stay. In the bankruptcy court's order granting the contempt motion, it determined that the judgment was void. Holt/Trust appealed the contempt order to the district court.

-7-

Ms. Holland's mother, who loaned Debtors $7,500 to cover a portion of Debtors' bankruptcy related fees of $32,000. Debtors listed the Holt/Trust debt from the Civil Action as "contingent, unliquidated and disputed."

### 1. The motion to dismiss

In November 2014, Holt/Trust filed an Omnibus Motion: (1) To Dismiss for Bad Faith; (2) To Remove Debtors as Trustee; and (3) For Relief from Stay ("Motion to Dismiss").[7] For dismissal under § 1112(b), Holt/Trust argued that Debtors' chapter 11 case had been filed in bad faith solely as a litigation tactic to defeat or delay the Civil Action judgment. In short, Holt/Trust contended that Debtors' bankruptcy filing was merely a substitute for posting an appeal bond. Holt/Trust contended that the timing of Debtors' case — filed just days after an announced adverse judgment for $1.3 million and a constructive trust against their real property (purchased with allegedly stolen Trust money) — was a glaring example of a bad faith filing intended to prevent a written order being entered and to circumvent the appeals process.

Holt/Trust contended that Debtors had provided direct evidence of their bad faith by admitting at their § 341(a) meetings that the sole reason for filing the bankruptcy case was to impede entry of the Civil Action judgment. Debtors also admitted they were aware of their right to appeal, but chose to file for bankruptcy instead. Finally, Holt/Trust argued that

[7] Because the bankruptcy court decided to convert the case to chapter 7, no relief to appoint a chapter 11 trustee or examiner was necessary. No party disputes that ruling. Holt/Trust also withdrew the request for relief from stay before the evidentiary hearing on the Motion to Dismiss. Therefore, we focus only on the court's decision to convert.

Debtors were solvent. At the time of filing, Debtors' liabilities were $12,600; their assets were $1,435,849.04.

Debtors opposed the Motion to Dismiss, maintaining that their case was not filed in bad faith. First, they asserted that they arguably were not solvent, considering the large Holt/Trust debt. Second, the bankruptcy case was filed 18 months after the defaults had been entered. Third, litigation in the Civil Action was essentially over except for some accounting. Finally, since their case had been filed only three months ago, they had not been given a reasonable opportunity to file a plan of reorganization. Alternatively, Debtors argued that "unusual circumstances" existed to not dismiss their case, which included the fact they were defaulted in the Civil Action.

### a. Initial hearing on the Motion to Dismiss

Both parties appeared with counsel at the initial hearing on the Motion to Dismiss on December 10, 2014. Holt/Trust requested a continuance for an opportunity to remedy notice deficiencies. Because of the seriousness of the issue, the bankruptcy court decided that an evidentiary hearing was appropriate. In its scheduling order entered December 15, 2014, the court ordered the parties to submit briefs to "elaborate on and address the evidence elicited during the trial in connection with the parties' state court litigation and the issues identified in the Motion and Debtors' response to it." An evidentiary hearing was set for March 2, 2015.

Debtors' pre-hearing brief in opposition to the Motion to Dismiss was essentially a copy and paste of their prior brief and did not address the issues noted by the bankruptcy court in the

-9-

scheduling order. Holt/Trust's brief, however, did provide more details about the Civil Action. Holt/Trust noted that when Green received notice of the pleading to remove him as trustee, he withdrew $125,000 in cash and securities from Trust accounts and provided the Amendment with the redacted beneficiary designation, which caused havoc between the beneficiaries. The distribution pattern to beneficiaries during Green's tenure matched neither the original Trust nor the Amendment. Holt/Trust also emphasized that the prove-up hearing was originally scheduled for November 7, 2013. However, on Green's request, the state court reset the hearing for November 26, 2013; then to December 11, 2013; then to January 23, 2014; then to March 13, 2014; then to May 8, 2014; then to May 22, 2014. At the end of the May 22 session, the court continued the prove-up hearing for Green to review a copy of the transcript and to file any written objections and/or obtain counsel; Green did neither by the deadline of June 11, 2014. Green then asked for another continuance for extra time to respond. The state court again continued the prove-up hearing to August 28, 2014.

**b.    The evidentiary hearing on the Motion to Dismiss**

Roland, Klein and Debtors testified at the evidentiary hearing on March 2, 2015. Klein stated that she had been employed at the law firm representing Holt/Trust for the past 15 years. Klein explained that a forensic investigator is someone who looks into, particularly at her firm, probate trust malfeasance. She admitted that she had no college level degree in forensic accounting, accounting or any other subject. She testified that, besides work done for her firm, she had done forensic

-10-

investigation of this type for several other parties for a fee. Klein admitted that Green did not appear at the May 22 session of the prove-up hearing in the Civil Action until after she had been admitted as an expert, so he was not there to object.

Green's testimony as to the state court proceedings was vague and sometimes contradictory; he recalled little. As for the petition seeking his removal as trustee and subsequent order, Green claimed that he understood nothing about Holt/Trust's allegations of malfeasance and that he had no knowledge of the state court finding that the accounting he submitted in 2008 was inaccurate. Green could not recall being served with the orders to appear and to provide an accounting of Trust assets or to appear for deposition. Green did not recall that he had been removed as trustee of the Trust for malfeasance, claiming that the April 2009 order never stated a reason for his removal. Green was also unsure as to whether he even received notice of the hearing seeking his removal as trustee. However, Green admitted that when he removed thousands of dollars out of Trust accounts as repayment for approximately $163,311 in loans he made to the Trust years prior, it could have been in response to the removal notice. Green also testified that although he deposited check payments for Trust assets into his personal bank accounts, he did not believe that he commingled his personal assets with those of the Trust. Green testified that once he provided the 2009 List to Roland in June 2009, he was under the impression that everything was settled and his involvement was over.

Green also stated that he did not recall getting notice of the Forfeiture Order in 2012, which contradicted his § 341(a)

-11-

meeting testimony, but he later testified that he did not dispute receiving it. He testified that he knew nothing about the default entries in the Civil Action in January 2013. Green also said he did not recall the state court's oral ruling at the August 28, 2014 session of the prove-up hearing, just six months prior, that he was a thief and had stolen hundreds of thousands of dollars from the Trust.

Holland testified that her understanding when filing their bankruptcy case was that Green would be able to produce documents showing that no Trust funds were misappropriated, that all of their assets would not be dissolved, and that if they did owe anything to Holt/Trust it could be paid in an orderly fashion. Holland testified that she knew "very little" about Green's activities while he was acting as trustee for the Trust. Holland stated that she had no involvement with the Trust or had any control over Trust assets. She also knew nothing about the Probate Action when it was pending.

After closing arguments from the parties, the bankruptcy court took the matter under submission, noting that it would issue a written decision promptly. The written decision was not issued for several months.

**2.    Debtors' disclosure statement and plan**

Meanwhile, the exclusivity period for Debtors to file their chapter 11 plan and disclosure statement was set to expire on January 1, 2015, with a plan confirmation deadline of March 3, 2015. On December 30, 2014, Debtors moved to extend the exclusivity period. The bankruptcy granted the extension, giving Debtors until April 1, 2015, to file their plan and disclosure

-12-

statement and until June 1, 2015, to get their plan confirmed.

Debtors filed their disclosure statement and plan on April 1, 2015.

Before any decision was entered, Debtors again moved for an extension of another 180 days to get their plan confirmed. Although discussed more fully below, Debtors contended another extension was warranted due to: (1) Holt/Trust's objection to Debtors' claimed exemptions set for hearing on July 2, 2015; and (2) two pending adversary proceedings between Holt/Trust and Debtors that had been consolidated and not resolved, as well as two appeals, one of which was the contempt order. In addition, Holt/Trust had sought to withdraw the reference, which had not yet been decided.

On June 10, 2015, the bankruptcy court entered an order giving Debtors until November 28, 2015, to get their plan confirmed.

Meanwhile, on June 2, 2015, the bankruptcy court disapproved Debtors' disclosure statement on the basis that it failed to provide adequate information under § 1125(a). Debtors never filed an amended disclosure statement or another plan.

**3.    Holt/Trust's motion to estimate and temporarily allow claim for voting purposes**

Holt/Trust filed an amended proof of claim on December 31, 2014 ("Claim"). The Claim was based on a "compensatory and punitive judgment" of $1,276,854.14, alleged to be secured in part pursuant to a constructive trust and equitable lien on Debtors' (stolen) real estate and other property in the amount of $638,427.07; the remaining $638,427.07 was unsecured.

-13-

Some additional background here is warranted for context. Shortly after Debtors filed their bankruptcy case, they removed the Civil Action to the bankruptcy court ("Removal Action," Adv. No. 14-01177). Thereafter, Holt/Trust moved for remand and asked the bankruptcy court to abstain from hearing the matter. The bankruptcy court denied remand. Holt/Trust appealed the remand denial to the district court. Holt/Trust also moved for withdrawal of the reference in the Removal Action.

The same day Debtors filed the Removal Action, Holt/Trust filed a dischargeability action against Debtors, seeking to except the debt from discharge under § 523(a)(2), (4) and (6) (the "523 Action," Adv. No. 14-01178). In their answer, Debtors asserted a counterclaim objecting to Holt/Trust's Claim and sought a determination of the validity, extent and priority of any lien held by Holt/Trust.

On Debtors' motion, the Removal Action and the 523 Action were consolidated on February 18, 2015. Thus, matters pending in both the Removal Action and the 523 Action are subject to the withdrawal of the reference, which is still undecided.

On August 5, 2015, Holt/Trust moved to estimate and temporarily allow the Claim for voting purposes ("Claim Estimation Motion"). At that point, Debtors' disclosure statement had been disapproved and not amended.

Debtors opposed the Claim Estimation Motion for three reasons. First, Debtors questioned the bankruptcy court's jurisdiction to estimate the Claim because allowance of the Claim was subject to the 523 Action, which had now been consolidated with the Removal Action, which was subject to Holt/Trust's

-14-

withdrawal of the reference. Second, even if the bankruptcy court had jurisdiction, Debtors contended the Claim Estimation Motion was premature as there was no plan pending. Finally, Debtors contended the court had discretion to deny the Claim Estimation Motion because the Claim was subject to dispute and the delay in its resolution was the fault of Holt/Trust.

In reply, Holt/Trust contended the bankruptcy court had jurisdiction to estimate the Claim even though the removed 523 Action contained the counterclaim seeking to disallow it. Plan confirmation was still within the bankruptcy court's jurisdiction, which was a separate question from claim allowance. Further, argued Holt/Trust, the Claim Estimation Motion was not premature. Debtors had cited no case law that requires a plan to be pending before a request to vote a disputed claim is sought. Finally, while Holt/Trust conceded they had caused some delay in resolving the Claim issue, nothing about it was improper. In fact, Debtors consolidating the two adversaries ensured that appeal of any one substantive issue within them would delay all issues, including resolution of Debtors' Claim objection.

After a hearing on September 9, 2015, the bankruptcy court issued its oral ruling on the Claim Estimation Motion on September 18, 2015. Concluding that it had jurisdiction to estimate and temporarily allow the Claim for voting purposes, the court granted the motion on the basis that the Claim was both contingent and unliquidated, and waiting until the Claim was liquidated would cause undue delay in the administration of the case. The court estimated the unsecured Claim at $638,427.07 ("Estimated Claim").

-15-

The bankruptcy court entered an order allowing the Estimated Claim for voting purposes only under § 502(c)(1) and Rule 3018(a) on September 23, 2015 ("Claim Estimation Order"). Debtors timely appealed the Claim Estimation Order.

**4.  The bankruptcy court's decision on the Motion to Dismiss**

The bankruptcy court entered its 43-page Memorandum Decision on the Motion to Dismiss on September 30, 2015, one week after the Claim Estimation Order had been entered. The court found that Debtors' bankruptcy case had been filed in bad faith, thereby providing "cause" under § 1112(b)(1). Debtors had failed to establish that any "unusual circumstances" existed under § 1112(b)(2) to not dismiss or convert the case. However, the court declined to dismiss the case, finding that conversion to chapter 7 was in the best interest of creditors and the estate.

The bankruptcy court entered an order converting Debtors' case to chapter 7 on October 1, 2015 ("Conversion Order"). Debtors timely appealed the Conversion Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). Subject to our discussion below, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.  Did the bankruptcy court abuse its discretion when it converted Debtors' chapter 11 bankruptcy case to chapter 7?

2.  Did the bankruptcy court abuse its discretion by estimating and temporarily allowing the Claim for voting purposes?

## IV. STANDARDS OF REVIEW

The bankruptcy court's interpretation of the Code is reviewed

-16-

de novo. Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1188 (9th Cir. 2011). We review our own jurisdiction, including questions of mootness, de novo. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014) (citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003)).

We review the bankruptcy court's order converting Debtors' chapter 11 case to chapter 7 for an abuse of discretion. Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities), 264 F.3d 803, 806 (9th Cir. 2001). We review the bankruptcy court's finding of "bad faith" for clear error. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994).

We also review for an abuse of discretion the bankruptcy court's decision to allow temporarily the Estimated Claim for voting purposes. See Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC), 481 B.R. 51, 63 (9th Cir. BAP 2012) (Rule 3018(a) decisions are reviewed for abuse of discretion). However, we review de novo whether the bankruptcy court had subject matter jurisdiction to enter the Claim Estimation Order. See McCowan v. Fraley (In re McCowan), 296 B.R. 1, 2 (9th Cir. BAP 2003) ("Whether a court has subject matter jurisdiction is a question of law that we review de novo.").

A bankruptcy court abuses its discretion if it applied the wrong legal standard or its factual findings were illogical, implausible or without support in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

///

///

-17-

**V. DISCUSSION**

**A.  The bankruptcy court did not abuse its discretion when it converted Debtors' chapter 11 case to chapter 7.**

**1.  Dismissal or conversion under § 1112(b)**

Section 1112(b)(1) provides, in relevant part, that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court. Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 612 (9th Cir. BAP 2014).  And, if the bankruptcy court determines that cause exists to convert or dismiss, it must also:  (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.  Id. (citing § 1112(b)(1), (b)(2)).

The movant seeking relief under § 1112(b) bears the initial burden of proving by a preponderance of the evidence that "cause" exists.  Id. at 614.

**2.  Bad faith as cause to convert or dismiss**

The bankruptcy court found that "cause" existed to convert on the basis that Debtors' petition was filed in bad faith.  Although § 1112(b) does not explicitly require that cases be filed in "good faith," a lack of good faith in filing a chapter 11 case establishes cause for dismissal.  Marshall v. Marshall

-18-

(In re Marshall), 721 F.3d 1032, 1047 (9th Cir. 2013); In re Marsch, 36 F.3d at 828; In re Sullivan, 522 B.R. at 614. In determining whether the petition was filed in good faith, "the debtor's subjective intent is not determinative." In re Marsch, 36 F.3d at 828. Rather, the good faith inquiry focuses on the manifest purpose of the filing and whether the debtor is seeking to achieve thereby "objectives outside the legitimate scope of the bankruptcy laws." Id.; In re Sullivan, 522 B.R. at 614.

Simply put, in determining whether the chapter 11 petition was filed in good faith, the bankruptcy court must ascertain "whether [the] debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." In re Marsch, 36 F.3d at 828 (citing Idaho Dep't of Lands v. Arnold (In re Arnold), 806 F.2d 937, 939 (9th Cir. 1986)); Grego v. U.S. Tr. (In re Grego), 2015 WL 3451559, at *5 (9th Cir. BAP May 29, 2015).

When bad faith is relied upon and established as cause for relief under § 1112(b), "[d]ebtor bears the burden of proving that the petition was filed in good faith." In re Marshall, 721 F.3d at 1048 (quoting Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 940 (9th Cir. BAP 1997)), aff'd, 171 F.3d 1219 (9th Cir. 1999).

In making the good faith determination, the bankruptcy court typically must consider "an amalgam of factors," instead of relying on a single dispositive fact. In re Marsch, 36 F.3d at 828. Such determinations are to be made "on a case by case basis, and there is no talismanic list of factors that must be present in each case in order to find bad faith; the weight given to any particular factor depends on all of the circumstances of the

-19-

individual case." In re Grego, 2015 WL 3451559, at *6 (citing Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship), 30 F.3d 734, 738 (6th Cir. 1994); de la Salle v. U.S. Bank, N.A. (In re de la Salle), 461 B.R. 593, 605 (9th Cir. BAP 2011) (holding that, in chapter 13 cases, bankruptcy courts must consider the "totality of the circumstances" before making a bad faith determination)).

### 3. Analysis

After carefully reviewing an amalgam of factors, the bankruptcy court determined that Debtors were and are attempting to unreasonably deter and harass Holt/Trust by filing their chapter 11 petition. In addition, the court found that Debtors were not attempting to effect a speedy, efficient reorganization on a feasible basis, but were instead attempting to achieve delay and other objectives outside the legitimate scope of the Code. Thus, Debtors' bankruptcy petition was not filed in good faith and established "cause." Debtors do not challenge the bankruptcy court's finding of bad faith directly, but rather raise procedural arguments and challenge the court's finding that unusual circumstances were not present under § 1112(b)(2). We now turn to these arguments.

Debtors contend that because the bankruptcy court held the evidentiary hearing four months after the Motion to Dismiss was filed and did not decide the matter until seven months later, it erred as a matter of law. Under § 1112(b)(3), the bankruptcy court is required to hear a motion under § 1112(b) within 30 days after the filing of the motion and decide the motion not later than 15 days after the initial hearing, "unless the movant

-20-

expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph."

Debtors never before objected to the timing of the evidentiary hearing or of the bankruptcy court's decision. Generally we will not consider an issue raised for the first time on appeal; the failure to raise an issue before the bankruptcy court may constitute a waiver. See Price v. Lehtinen (In re Lehtinen), 332 B.R. 404, 411 (9th Cir. BAP 2005). We may consider such an issue later on appeal. See Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014). Given the pure legal issue here and the developed record, we exercise our discretion to consider Debtors' argument and conclude to the contrary. See Id. (we have discretion to consider arguments raised for the first time on appeal if the issue presented is purely a legal one and either does not depend on the factual record developed below or the pertinent record has been fully developed). As prescribed by the statute, which is clearly designed for the party seeking dismissal or conversion, movant Holt/Trust expressly consented to the evidentiary hearing set four months out. See Smith v. Colo. Dep't of Rev. (In re Hook), 2008 WL 3906794, at *5 (10th Cir. BAP Aug. 26, 2008) (statutory right under § 1112(b)(3) to have hearing conducted within 30 days "plainly belongs to the moving party" rather than to the debtor). Secondly, while the seven month wait for a decision was arguably lengthy, particularly when considering the court's statement at the evidentiary hearing that it would render a decision promptly, Debtors fail to acknowledge the second part of § 1112(b)(3), which

-21-

permits the court to decide the motion beyond the 15-day time limit if "compelling circumstances" so require. Clearly, the 15-day decision rule in § 1112(b)(3) is flexible; the court is allowed to extend that time limit if necessary.

We further observe that § 1112(b)(3) is not self-executing and does not provide for a specific consequence for either party should a motion to dismiss or convert not be heard within 30 days or decided within 15 days thereafter. See In re Pinnacle Labs., Inc., 2008 WL 5157981, at *4 n.1 (Bankr. D.N.M. June 19, 2008) (noting the difference between § 1112(b)(3) and § 362(e)(1) & (2), which allow relief or modification from stay if hearings are not conducted or decisions rendered within certain periods of time). Therefore, the bankruptcy court did not commit reversible error by conducting an evidentiary hearing four months after the Motion to Dismiss had been filed or by not adhering to the 15-day decision rule after that hearing's conclusion.

Debtors next contend the bankruptcy court erred by considering in its decision to convert events that occurred months after the evidentiary hearing, when it should have based its decision only on facts from the Motion to Dismiss and the related evidentiary hearing in March 2015. In particular, Debtors assign error to the court's consideration of evidence regarding alleged commingled Trust funds used to purchase their residence that was presented at a hearing on Holt/Trust's objection to Debtors' claimed exemptions in July 2015. In making a credibility determination about Debtors, the bankruptcy court indicated that the testimony regarding whether alleged commingled Trust funds were used to purchase their residence was in fact presented at the

-22-

evidentiary hearing on the Motion to Dismiss. Review of that transcript reflects that no such testimony was offered there. So, with respect to that factual statement, the court did err.

However, careful review of the transcript from the evidentiary hearing on the Motion to Dismiss also shows that Green's testimony was not particularly creditworthy and was impeached on a variety of issues. In addition, Green admitted to depositing Trust funds into Debtors' personal accounts, but then claimed he did not commingle any Trust funds with Debtors'. More importantly, the fact of the alleged commingled Trust funds evidence at the hearing on Debtors' exemptions was only one part of one factor the court relied upon as indicia of bad faith for the Motion to Dismiss (i.e., whether egregious behavior by debtor is present). Thus, even if the court erred in considering that evidence and in making any factual finding respecting it, it does not negate the court's other factual findings supporting its bad faith ruling which Debtors do not contest.

Next, Debtors argue that the bankruptcy court should not have converted the case at the time it did, because of the pending Claim objection, pending appeals, and an undecided withdrawal of the reference filed by Holt/Trust. This argument appears to go to Debtors' argument that "unusual circumstances" existed to not convert their case, and the bankruptcy court erred by not concluding otherwise. As noted above, once the bankruptcy court determines that cause exists to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the

estate;[8] and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. In re Sullivan, 522 B.R. at 612; § 1112(b)(1), (b)(2). The word "unusual" is not defined in the Code, but contemplates facts that are not common to chapter 11 cases, generally. 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2] (Alan N. Resnick & Henry J. Sommers, eds., 16th ed.).

If the bankruptcy court does specifically find and identify such "unusual circumstances," the debtor must also prove (1) there is a reasonable likelihood of plan confirmation within a reasonable time, (2) that the "cause" shown for conversion or dismissal was reasonably justified, and (3) that the cause for conversion or dismissal can be "cured" within a reasonable time. Warren v. Young (In re Warren), 2015 WL 3407244, at *4 (9th Cir. BAP May 14, 2015) (citing § 1112(b)(2)(A) & (B)).

Debtors concede it was their burden to demonstrate unusual circumstances existed so that dismissal or conversion was not in the best interests of creditors and the estate. See id. at *4 ("Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best

---

[8] Debtors do not dispute the bankruptcy court's decision to convert as opposed to dismiss. We see no error in that ruling. The court independently analyzed the issue and determined that conversion was in the best interest of creditors and the estate, particularly because conversion ensured that all estate assets could be properly collected, secured and distributed promptly in an equitable manner. See In re Sullivan, 522 B.R. at 613 (bankruptcy court has an independent duty under § 1112 to consider whether dismissal or conversion would be in the best interest of all creditors and the estate, regardless of what form of relief the moving party has requested); In re Sann, 2015 WL 1943911 at *10-11 (Bankr. D. Mont. Apr. 29, 2015) (same).

-24-

interests of creditors and the estate.") (quoting 7 COLLIER ON BANKRUPTCY at ¶ 1112.05[2]). The only "unusual circumstances" Debtors raised before the bankruptcy court was the fact of the default entry. The bankruptcy court disagreed this constituted anything unusual in a chapter 11 case. We agree; this hardly seems unusual, as many debtors prior to filing for bankruptcy have had defaults entered against them in another court.

However, Debtors now argue that the proposed plan and disclosure statement, pending Claim objection, pending appeals, and the undecided withdrawal of the reference constitute unusual circumstances. Leaving aside momentarily the proposed plan, Debtors do not explain how any of these issues establish that chapter 11, as opposed to conversion or dismissal, is in the best interest of creditors or the estate. Also, nothing is unusual about pending dischargeability actions or claim objections in an individual chapter 11 case. As for the proposed plan, a compelling ground for denying a motion to dismiss grounded on bad faith is a debtor showing that a plan of reorganization qualifies and is ready for confirmation. In re Marshall, 721 F.3d at 1049. Although Debtors had filed a proposed plan, their disclosure statement was rejected and they never filed an amended version curing the defect(s). Thus, this does not help them either.

Along this same vein, and assuming unusual circumstances exist, Debtors argue that the bankruptcy court erred in converting their case to chapter 7 on October 1, 2015, after giving them until November 30, 2015, to confirm a plan, and in finding that a plan could not be confirmed in a reasonable time. Debtors argue that with the Claim Estimation Order being entered just one week

-25-

earlier estimating the Claim at $638,427.07, they were not given time to file a new plan and disclosure statement based on that decision. The bankruptcy court noted that while Debtors had filed a plan, no disclosure statement had been approved and the plan was never set for a confirmation hearing. Even if Debtors were correct that they should have been given more time, they failed to address the court's other concern that Debtors identified only one class of creditors — general unsecured. As such, the court found that no separate impaired class of creditors existed that could vote in support of the plan, and the likelihood that Holt/Trust would vote in favor of it was remote. Any new plan would appear to have the same challenges.

More importantly, even if Debtors could confirm a plan within a reasonable time, they have not shown how the "cause" established to convert their case — bad faith — was either reasonably justified or is curable. See § 1112(b)(2)(B). As the bankruptcy court found, filing a petition in bad faith could never be reasonably justified or curable, no matter what plan Debtors could now propose. For this same reason, we reject Debtors' argument that because they had the assets to fund a 100% plan if needed, the bankruptcy court erred in holding that they could not propose a confirmable plan.

Debtors' last contention seems to go more to their appeal of the Claim Estimation Order, arguing that the bankruptcy court erroneously based its decision to convert, in part, on its estimation of the Claim. Debtors' argument here is unclear. Although the bankruptcy court had entered the Claim Estimation Order one week before the Conversion Order, the court said nothing

-26-

in its Memorandum Decision about the Estimated Claim or that it was a basis for converting. In any event, Debtors' argument is without merit as the bankruptcy court temporarily estimated the Claim solely and exclusively for purposes of voting to accept or reject any proposed plan under § 502(c)(1) and Rule 3018(a); such estimation did not serve as a basis for converting the case under § 1112 or applicable case law. Moreover, the resolution of the appeal of the Claim Estimation Order will not change the bankruptcy court's ruling that Debtors filed their petition in bad faith, which was not substantially justified and cannot be cured.[9]

Accordingly, because the bankruptcy court's finding of bad faith is supported by the record and not clearly erroneous, and it properly applied the governing law, we AFFIRM the Conversion Order.

**B.   Because we are affirming the Conversion Order, the appeal of the Claim Estimation Order is DISMISSED as MOOT.**

Debtors also appeal the Claim Estimation Order. After determining it had jurisdiction over the matter, the bankruptcy court proceeded to estimate and temporarily allow Holt/Trust's unsecured Claim for voting purposes only in the amount of

---

[9] Debtors make a great deal of Klein's testimony, arguing that she lacked the credentials necessary to be admitted as an expert witness. First, Klein was admitted as an expert witness at the state court prove-up hearing, not at the evidentiary hearing on the Motion to Dismiss, which the bankruptcy court merely acknowledged in its recitation of the facts. Second, Debtors had months between the two sessions of the prove-up hearing to object to Klein's testimony or to hire counsel but did not do so. Finally, while Klein may not have a degree in forensic accounting, she has been doing probate trust malfeasance investigation for at least 15 years, and the state court judge commented favorably on her abilities, noting that her work was the best he had seen in his 40 years on the bench.

-27-

$638,427.07. Notably, the court's ruling here was very narrow. It explicitly stated at the hearing and in the order that the temporary estimate and allowance of the Claim was solely and exclusively for purposes of voting to accept or reject a chapter 11 plan of reorganization; the court was not determining the allowance or disallowance of the Claim, the allowable amount or the extent of any lien securing the Claim if allowed, nor the nondischargeability of the Claim under § 523(a). In other words, the Claim Estimation Order would have no preclusive effect in any other matter or before any other court.

In light of the bankruptcy court's narrow ruling and our decision affirming the Conversion Order, we must dismiss the appeal of the Claim Estimation Order. See United States v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001) (we cannot exercise jurisdiction over a moot appeal). No chapter 11 case exists and no plan will be presented requiring voting from creditors. Therefore, even if we were to reverse the Claim Estimation Order, we can provide no effective relief to Debtors. See Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968-69 (9th Cir. 2016) (test for mootness is whether an appellate court can still grant effective relief to the prevailing party if it decides the merits in his or her favor).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the Conversion Order. Because we are affirming the Conversion Order, the appeal of the Claim Estimation Order is therefore DISMISSED as MOOT.

-28-