**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1183-STaF |
| SEUNGHWAN JEONG aka Seung Hwan Jeong and AMY PARK JEONG aka Hyekyung Park, | Bk. No. 8:18-bk-12033-ES |
| | Adv. No. 8:18-ap-01169-ES |
| Debtors. | |
| JIN REE, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| SEUNGHWAN JEONG, | |
| Appellee. | |

Submitted Without Oral Argument on May 20, 2020

Filed – June 2, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

————————

Appearances:    Appellant Jin Ree, on brief, pro se; appellee Seunghwan
Jeong, on brief, pro se.

————————

Before: SPRAKER, TAYLOR, and FARIS, Bankruptcy Judges.


**INTRODUCTION**

Creditor Jin Ree appeals from an order dismissing his adversary proceeding against chapter 7[1] debtor Seunghwan Jeong under §§ 523 and 727. The bankruptcy court dismissed the action because Ree never filed a second amended complaint after the court set a deadline for him to do so.

Ree contends that the bankruptcy court erred by not giving him additional time to file the second amended complaint. But the court did not abuse its discretion when it dismissed the adversary proceeding during a status conference held two months after the deadline had expired.

Ree also appeals from the bankruptcy court's order imposing Rule 9011 sanctions against him. He has argued that Rule 9011 does not apply in adversary proceedings and that Jeong should not have been awarded any sanctions because he did not prevail on the merits of Ree's lawsuit. Neither

————————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

of these arguments has any merit.

Consequently, we AFFIRM both orders.

## FACTS

**A.    The state court action.**

In January 2013, Ree commenced a collection action against Jeong in the Los Angeles County Superior Court. Ree was the assignee of a contract under which Jeong agreed to buy certain goods from Ree's predecessor in interest. Jeong never responded to Ree's complaint. In June 2013, the state court entered in Ree's favor a default judgment against Jeong for $164,755.13.

**B.    Jeong's bankruptcy case and schedules.**

Jeong did not commence his bankruptcy until five years after entry of the default judgment. In June 2018, he and his wife filed a joint chapter 7 petition. Their schedules indicated that they owned no real property and little personal property of any significant value. Among other things, they listed 100% ownership of a garment import company known as S&H Global, Inc., which they valued at $4,310.41. They listed no secured claims, no priority unsecured claims, and general unsecured debt totaling $394.306.00. They accurately scheduled Ree's claim as a judgment debt for $164,755.00. The balance of their debt consisted of credit card debt, accounts in collection, judgment debts, personal loans, and lease payments in arrears.

As for income, debtors listed on their Schedule I current monthly income of $2,907.17. Most of that amount was derived from Mr. Jeong's employment as president of S&H Global. On their Schedule J, debtors listed total monthly expenses of $5,142.00, the largest of which was monthly rent of $2,550.00. Their monthly expenses also included $500.00 for utilities, roughly $800.00 in car lease payments, and $800.00 for food and housekeeping supplies for their family of four.

## C.    Ree's adversary proceeding.

Ree commenced an adversary proceeding against Mr. Jeong seeking to except his judgment debt from discharge under §§ 523(a)(2)(A) and (6). Ree's complaint also objected to Jeong receiving a discharge of any of his debts under §§ 727(a)(3) and (4). Ree claimed that when Jeong originally purchased the goods, he already intended that he would not pay for those goods but instead secretly harbored an intent to file bankruptcy as soon as "collection actions [were] acted against him." According to Ree, in furtherance of Jeong's efforts to avoid paying for the goods, he lied on his income tax returns and his bankruptcy schedules, thereby committing tax fraud and bankruptcy fraud.

Ree further claimed that Jeong's monthly income and expense numbers set forth in his bankruptcy schedules were particularly suspicious. But it is not clear why Ree considered them suspicious. Later in his complaint, Ree alleged that the extent of Jeong's scheduled and hidden

assets suggested that his total household monthly income must be greater than the scheduled amount. Otherwise, Ree speculated, Jeong could not have "built up" the amount of assets he actually has. Ree's complaint offers no indication why he thinks Jeong has hidden assets or what those hidden assets might be.

1.    **The dismissal motions.**

In October 2018, Jeong filed a motion to dismiss Ree's original complaint. Shortly thereafter, Ree filed his first amended complaint, so Jeong withdrew his motion to dismiss.[2] Jeong then filed a motion to dismiss the first amended complaint. Jeong asserted that the complaint was conclusory and failed to allege facts from which the court reasonably could infer that Ree was entitled to any relief. After holding a hearing on the motion to dismiss, the bankruptcy court granted the dismissal motion but gave Ree leave to amend. The court's order set a deadline of April 12, 2019 for Ree to file and serve his second amended complaint.

The certificate of notice for the dismissal order reflected that it was served on Ree by mail at his address of record on March 30, 2019. But the same day that the court entered the dismissal order, Ree filed a motion for extension of time to file his second amended complaint. Ree claimed that

---

[2] Ree's original complaint alleged that he held a judgment debt against Jeong for $395,183.00. His first amended complaint changed the amount of the judgment debt to $164,755.13. That is the only significant difference between the two complaints.

he was having trouble finding on the court's website the court's written tentative ruling, which the court apparently adopted as a written version of its final ruling. Ree requested an extension of the due date for his second amended complaint until 30 days from the date of the uploading of the written ruling.

On April 16, 2019, the court entered an order denying the extension motion. This order also was served on Ree. According to the court's denial order, it told Ree at the hearing that it would post "the written basis for its ruling" on its tentative ruling webpage. The court noted that the written ruling was, in fact, posted on its tentative ruling webpage the day after the hearing on the motion to dismiss.

**2.      The sanctions motion.**

After filing the motion to dismiss the first amended complaint, Jeong filed a motion for sanctions under Civil Rule 11. Jeong argued that Ree had filed a factually and legally baseless discharge complaint in an attempt to coerce Jeong into paying the prepetition debt. As Jeong explained, the prior state court action was nothing more than a garden variety collection action on a contract. Jeong recounted how his counsel met and conferred with Ree and requested that he provide some basis for the allegations of fraud and other misconduct alleged in his original complaint. Jeong's counsel also demanded amendment or dismissal of the original complaint. Jeong further recounted how, after he filed his motion to dismiss the original

6

complaint, Ree filed his first amended complaint, which merely reduced the alleged amount Jeong owed Ree from $395,183.00 to $164,755.13. According to Jeong, after the filing of the first amended complaint, his counsel again met and conferred with Ree, again requested the factual basis for Ree's allegations of fraud and other misconduct, and again requested dismissal. As Jeong put it, Ree responded that he only would dismiss the first amended complaint if Jeong paid him a portion of the amount Jeong owed him.

Ree filed his opposition to the sanctions motion. Ree detailed his experience as a certified court interpreter and as a licensed paralegal. He further indicated that he had extensive personal experience as a litigant, mostly in state court but also partly in federal court. The rest of his opposition is rambling and difficult to understand. In essence, however, he asserted that Civil Rule 11 was inapplicable to bankruptcy court adversary complaints and there was no other law or legal authority permitting Jeong to move for sanctions based on the filing of Ree's adversary complaint.

Ree's opposition also included a request for sanctions against Jeong and his attorney. Ree reasoned that sanctions were appropriate because there was no legal basis for Jeong's sanctions motion and because of the unreasonable and unlawful demands Jeong's counsel made during the meet and confer process. Ree's declaration in support of his opposition indicated that he had expected that he would obtain information regarding

7

Jeong's fraud at his meeting of creditors, but he missed the opportunity to ask questions at the meeting because he got caught in traffic. Nonetheless, he stated that, even without discovery, the fact Jeong and his family live in a "luxury apartment," pay monthly rent of $2,400, and can afford to pay an attorney to represent him in his bankruptcy case and in the adversary proceeding are evidence that Jeong's bankruptcy filing is fraudulent.

The court continued the sanctions motion hearing to permit Jeong to file a declaration demonstrating that he complied with Rule 9011's safe harbor provisions by serving the sanctions motion at least 21 days before it was filed. Jeong filed the required declaration of his counsel. Jeong's counsel additionally detailed his most-recent meet and confer activities, still trying to persuade Ree to dismiss the adversary proceeding. According to Jeong's counsel, Ree responded as follows:

> he simply mentioned that 1) he would not dismiss the action unless Defendants pay him, that 2) he has handled hundreds of cases but he has never seen any court dismiss actions without giving him chances to amend complaint multiple times, that 3) he believes that he would get another leave to amend even if Rule 12 motion is granted again, that 4) he had already started amending his complaint (even before the tentative ruling was posted on the Court's website, suggesting that he did not care much about the court's kind suggestion to review the tentative ruling once posted), and that 5) he would file an appeal immediately after this Court orders the dismissal without leave to amend.

Lee Decl. (Mar. 14, 2019) at ¶ 6.[3]

The court held the final hearing on the sanctions motion on April 4, 2019, after it dismissed the first amended complaint but before the deadline to file the second amended complaint. Still, Ree did not appear for the hearing. The parties did not provide us with a copy of the transcript from this hearing. But the court issued a lengthy and detailed tentative ruling indicating that it was prepared to grant the sanctions motion and award sanctions against Ree. On April 16, 2019, the court entered its order imposing $3,000.00 in sanctions against Ree, payable within 60 days.

**D.      Dismissal of the adversary proceeding.**

At the hearing on the motion to dismiss the first amended complaint, the court scheduled a continued status conference for June 20, 2019, well after the deadline for the second amended complaint and the hearing on the sanctions motion. Still, Ree never attempted to belatedly file the required second amended complaint. Nor did he attempt to seek relief from the order denying his continuance motion or otherwise advise the court that he still needed more time.

Additionally, Ree did not cooperate in the preparation of a joint status report. The court had directed the parties to file a joint status report

---

[3] Jeong's counsel also attached to his declaration the results of his online litigation search for cases in the Los Angeles County Superior Court in which Jin Ree is named as a party. His search returned results for 165 cases since January of 2000.

by June 6, 2019. Jeong's counsel attempted to comply with the court's instruction, but according to him Ree refused. On June 6, 2019, Jeong filed a unilateral status report and the declaration of his counsel explaining why a joint status report was not filed. In his declaration, Jeong's counsel explained that he had contacted Ree and sought to meet and confer regarding the case, but was rebuffed. Counsel also stated that he had pointed out to Jeong that "he had failed to file the second amended complaint, and that there was no operative complaint in this action." The declaration concludes by requesting that the court "rule clearly that this action is dismissed in its entirety, so that Plaintiff knows that there is no further pending matter in this action." The proof of service included with the declaration states that the unilateral status report and declaration were mailed to Ree at his address.

Ree failed to appear at the continued status conference. The bankruptcy court noted Ree's failure to file and serve a second amended complaint and concluded that the adversary proceeding should be dismissed. On July 8, 2019, the bankruptcy court entered its order dismissing the adversary proceeding in its entirety. Ree timely appealed both the dismissal order and the sanctions order.[4]

---

[4] Orders imposing Civil Rule 11 sanctions against a party are considered interlocutory orders that generally are not appealable until entry of the final judgment in the litigation. *See Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109,

(continued...)

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court abuse its discretion when it dismissed Ree's adversary proceeding because he did not file a second amended complaint after the dismissal of his first amended complaint?

2. Did the bankruptcy court abuse its discretion when it imposed $3,000.00 in Rule 9011 sanctions against Ree?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting Jeong's Civil Rule 12(b)(6) motion. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011). But we review for an abuse of discretion its decision to dismiss Ree's adversary proceeding. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992). We also review for an abuse of discretion the bankruptcy court's imposition of Rule 9011 sanctions. *Valley Nat'l Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir. 1991). The denial of a motion to extend the deadline to file a court paper also is reviewed for an abuse of discretion. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010).

---

[4](...continued)
1113–14 (9th Cir. 1990).

11

A bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

### A.    Civil Rule 12(b)(6) standards.

Civil Rule 12(b)(6) motions test the legal sufficiency of the plaintiff's complaint by challenging whether the complaint presents any cognizable legal theories and whether it contains sufficient factual allegations to support those legal theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). In other words, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

To survive a Civil Rule 12(b)(6) motion, a claim for relief must be plausible on its face. *Iqbal*, 556 U.S. at 678. The claim is facially plausible only if it contains enough factual allegations that, if taken as true, would allow the court to reasonably infer that the defendant is liable to the plaintiff. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore,

mere legal conclusions are not accepted as true and cannot by themselves establish a plausible claim for relief. *Id.* Determining whether a claim for relief is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Importantly, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Therefore, if a complaint contains factual allegations "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted). The requirement the claim be plausible – and not merely possible – recognizes that some litigants pursue spurious lawsuits solely for their "in terrorem" effect and the resulting settlement value they engender. *See Twombly*, 550 U.S. at 556-58.

The Civil Rules governing pleading further inform our understanding of the plausibility standard. Civil Rule 8(a)(2) specifies that all claims for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, when pleading fraud, the plaintiff must state the circumstances constituting the fraud with greater particularity. *See* Civil Rule 9(b); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The plaintiff must include in his or her fraud allegations "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States*, 616 F.3d at 998 (quoting

13

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Civil Rules 8 and 9 apply to bankruptcy court adversary proceedings. *See* Rules 7008, 7009.

It bears mention that in considering Jeong's motion to dismiss, the court could properly take into account matters subject to judicial notice, including the entry of Ree's state court default judgment and the content of Ree's papers requesting entry of that judgment. *See Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997). The court also could take into account the contents of papers referenced in the plaintiff's complaint whose authenticity is not disputed. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

In his appeal brief, Ree does virtually nothing to argue that there were sufficient allegations to support the claims for relief stated in his complaint. He does not even mention the elements for the claims he attempted to state under §§ 523 and 727. We shall list the elements for each claim stated and then consider Ree's allegations with respect to each claim.

**B.      The § 523(a)(2)(A) claim for relief.**

To state a claim for fraud under § 523(a)(2)(A), the plaintiff needs to allege and prove: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the

creditor proximately caused by its reliance on the debtor's statement or conduct." *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1050 (9th Cir. 2014).

In support of his § 523(a)(2)(A) fraud claim, Ree essentially stated that Jeong's 2018 bankruptcy filing was the culmination of a fraudulent scheme that began when Jeong originally purchased the goods from the original creditor in 2006 and 2007 without any intent to pay for them. He claims that Jeong always intended to file bankruptcy even though over a decade elapsed between the purchase of the goods and the bankruptcy filing. As Ree put it, Jeong planned to file bankruptcy as soon as any collection activity was commenced. This is not plausible. In fact, it is inconsistent with the state court judgment Ree obtained. Ree began his collection action when he sued Jeong in state court and obtained judgment in 2013. But Jeong did not file bankruptcy until 2018. The fact that Jeong filed bankruptcy several years after Ree obtained the state court judgment, and long after the original transaction, is insufficient to support Ree's allegation that Jeong's bankruptcy filing was by itself part of a fraudulent scheme.

Put differently, we must consider the context and draw on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In the context of what appears to be a garden-variety contract claim, a plaintiff must plead and prove more than the fact that the defendant filed bankruptcy in order to convert the contract claim into a nondischargeable

15

fraud claim. While it is possible that Jeong may never have intended to pay when he entered into the contract more than a decade ago, that mere possibility does not make it plausible for purposes of defeating the motion to dismiss. Indeed, to hold otherwise would permit, and even encourage, every creditor with a breach of contract claim to file an exception to discharge complaint under § 523(a)(2)(A) based only upon the bankruptcy filing.

Ree indicated in his opposition to the motion to dismiss that he hoped to uncover facts to support his fraud allegations during discovery, but he ignored the need to include sufficient factual allegations in his complaint, as mandated by Civil Rule 9 and *Iqbal*'s plausibility standard. In short, the bankruptcy court did not err in dismissing Ree's § 523(a)(2)(A) claim with leave to amend.

## C.     The § 523(a)(6) claim for relief.

Section 523(a)(6) excepts from discharge debts arising from injuries to the creditor's person or property resulting from the debtor's willful and malicious conduct. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). A debtor's conduct is willful only if he or she subjectively intended to harm the plaintiff or subjectively believed that harm was substantially certain to occur as a result of his or her conduct. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1144-45 (9th Cir. 2002). In turn, maliciousness requires "(1) a wrongful act, (2) done intentionally, (3) which

necessarily causes injury, and (4) is done without just cause or excuse." *Id.* at 1146–47 (citations and internal quotation marks omitted). A debt arising from a breach of contract sometimes can be willful and malicious within the meaning of the statute, but only if it is "accompanied by malicious and willful *tortious* conduct." *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) (emphasis added) (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001)). For purposes of § 523(a)(6), conduct is tortious only if it would be considered tortious under state law. *Id.* at 1041-42.

The only tortious conduct Ree alluded to in his complaint is Jeong's supposed fraud. However, as set forth above, Ree did not sufficiently allege this fraud, and it would be implausible to infer fraud from the sparse facts in Ree's first amended complaint. The fact that Jeong eventually filed bankruptcy many years after purchasing goods does not by itself plausibly indicate the existence of fraud or any other tortious conduct.

Thus, the bankruptcy court did not err in dismissing Ree's § 523(a)(6) claim with leave to amend.

## D.    The § 727(a)(3) claim for relief.

Generally speaking, debtors who do not fully and accurately present their financial affairs are not entitled to a bankruptcy discharge. *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994). Section 727 helps to enforce this policy. *Id.* In particular, § 727(a)(3) prohibits the debtor's discharge when "debtor has concealed, destroyed, mutilated, falsified, or

failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." § 727(a)(3); *see also Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008). Thus, the debtor should be denied a discharge under § 727(a)(3) if the objecting party shows: "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Cox*, 41 F.3d at 1296.

Here, the allegations of Ree's first amended complaint contained little more than a recitation of § 727(a)(3)'s text. Ree mentioned in passing his suspicion that Jeong filed fraudulent tax returns and bankruptcy schedules. But Ree did virtually nothing to identify the factual basis for this suspicion. He pointed to the fact that Jeong's reported monthly expenses of $5,142.00 exceeded his monthly household income of $2,907.00 by a large amount. He also posited that Jeong's household assets could not have been "built up" with the monthly income and expenses Jeong reported.

These allegations are not plausibly indicative of a failure to create and maintain accurate financial records. They do not even make meaningful sense. We are not aware of any concrete or fixed correlation between a household's income and expenses and its ability to accumulate

18

assets. Indeed, Jeong's scheduled debt reflects the extensive use of credit to obtain assets, which would drastically attenuate any relationship between Jeong's income and expense numbers and the extent of his assets.

In the parlance of *Iqbal*, Ree's § 727(a)(3) claim was made up of nothing more than "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements." *Iqbal*, 556 U.S. at 679. As a result, Ree failed to state a plausible § 727(a)(3) claim, and the bankruptcy court did not err in dismissing this claim with leave to amend.

**E.      The § 727(a)(4) claim for relief.**

In relevant part, § 727(a)(4) prohibits the debtor's discharge if he or she makes a false oath or account in connection with his or her bankruptcy case. "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd & adopted*, 578 F.3d 1167, 1168 (9th Cir. 2009)). Section 727(a)(4) applies when: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Id.* (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)).

Ree gave virtually no information regarding what parts of Jeong's schedules supposedly were false or why Ree believed them to be false. Ree

19

baldly claimed that Jeong "falsely [listed] exempt assets and falsely [under-reported his] income." Once again, Ree pointed to Jeong's monthly income and expense figures and Jeong's supposed accumulation of assets. The first amended complaint then stated that Jeong's "most recent income report in the tax return are false and manipulated figures . . . ." As we stated above, far from being plausible, these allegations don't make sense and are nothing more than threadbare recitals of elements supported by conclusory statements. Accordingly, Ree failed to state a plausible § 727(a)(4) claim, and the bankruptcy court did not err in dismissing this claim with leave to amend.

## F.    Dismissal of Ree's adversary proceeding.

Though the bankruptcy court dismissed Ree's first amended complaint, it granted Ree leave to amend all of his claims for relief and set a deadline for filing and service of Ree's second amended complaint. In addition, to facilitate Ree's preparation of a second amended complaint, the court posted its written analysis of the grounds for dismissal of Ree's first amended complaint.

The same day the court entered its order dismissing the first amended complaint and setting the deadline for the second amended complaint, Ree sought to extend the time to file the second amended complaint. He stated that he could not find the court's written analysis. He (wrongly) assumed that the court had not posted its written analysis and

20

asked the court to set a deadline for his second amended complaint of 30 days after the court's written analysis was uploaded. But the court's deadline for the second amended complaint already gave Ree this exact amount of time. The court posted the written analysis on its tentative rulings webpage exactly 30 days before the second amended complaint was due.

On April 16, 2019, the court entered an order denying the extension motion. The court explained as follows:

> The motion is DENIED. The court indicated at the March 12, 2019 hearing that it would post its ruling to the Tentative Ruling field where it could be reviewed by Plaintiff. In fact, the court posted the written basis for its ruling on March 13, 2019.

Order To Continue Schedules - Denied (Apr. 16, 2019) at 2. Ree never sought any additional or different relief with respect to the deadline for filing and serving his second amended complaint. Nor did he ever attempt to obtain leave to belatedly file the second amended complaint on excusable neglect or other grounds.

Ree additionally failed to meet and confer with Jeong's counsel to prepare a required joint status report. The declaration from Jeong's counsel filed with his unilateral status report details Jeong's unsuccessful efforts to get Ree to participate, to remind him that he had failed to file the second amended complaint, and to advise him that Jeong was asking the court to confirm its dismissal of the case at the June 20, 2019 status conference.

Despite this, Ree failed to appear at the status conference. He has never offered any explanation for his failure to appear. At the status conference, the court noted Ree's failure to file and serve his second amended complaint. On that basis, the court dismissed the adversary proceeding.

When a plaintiff fails to file an amended pleading after dismissal of the prior complaint with leave to amend, the court has discretion to dismiss the action. *Ferdik*, 963 F.2d at 1260. The court typically needs to consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik*, 963 F.2d at 1260–61). When the trial court does not explicitly address these factors, the appellate court can independently review the record and consider the factors to determine whether the dismissal was an abuse of discretion. *Id.* at 640.

Ree has not argued that the bankruptcy court failed to consider or inappropriately weighed the controlling factors. Indeed, Ree has hamstrung our ability to review the bankruptcy court's exercise of its discretion by not ordering the transcript from the status conference at which the court confirmed the dismissal of the adversary proceeding. When the appellant fails to provide a necessary transcript, we are entitled

to presume that nothing in the missing transcript would assist the appellant. *See, e.g., California v. Yun (In re Yun)*, 476 B.R. 243, 253-54 (9th Cir. BAP 2012); *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (9th Cir. 1996).

Ree's appeal brief focuses exclusively on the denial of his motion for an extension of time to file and serve his second amended complaint. As Ree put it, he lost the chance to amend his complaint because the court denied his extension motion. Ree also assailed the court for not advising him of the differences between bankruptcy practice and general civil practice, for not instructing him how to find the court's written ruling on the internet, and for not arranging for the written ruling to be served on Ree by mail. He contends that, if the court had taken any of these steps, he could have timely prepared and submitted his second amended complaint.

Ree's argument is betrayed by his failure to ever file the second amended complaint. The only relief Ree sought in his extension motion was a deadline for filing and serving his second amended complaint of 30 days from the date of posting on the court's website the court's written analysis in support of its dismissal of the first amended complaint. But the deadline the court already had set was exactly 30 days after it posted its analysis.[5] Thus, Ree actually had the 30 days he sought to file the second

---

[5] Ree admits in his appeal brief that the legal consultant at his "Pro-Se Clinic"

(continued...)

amended complaint, but he still failed to file it by the date he had requested. He failed to take any further action after the court denied his motion for extension of time. And Ree still had not amended his complaint by the time the status conference was held more than two months later, after Jeong stated his intent to confirm the dismissal for Ree's failure to amend the first amended complaint. Indeed, Ree failed to appear for the hearing on the sanctions motion or the status conference.

While public policy strongly favors disposition of cases on the merits, the other *Ferdik* factors strongly weighed in favor of dismissal given the threadbare nature of Ree's two prior complaints and his continuing failure to remedy that situation by filing his third complaint. The bankruptcy court made available to Ree a detailed written analysis of the deficiencies in his first amended complaint, and yet Ree did little or nothing to fix those deficiencies. Under similar circumstances, the Ninth Circuit has affirmed dismissal of the lawsuit. *See Ferdik*, 963 F.2d at 1261. In short, the bankruptcy court did not abuse its discretion when it confirmed the dismissal of the adversary proceeding for failure to file the second

---

[5](...continued)
was able to "easily discover" where the court's written ruling was posted on the court's website. Apl't Br. at 5. While Ree states that he did not have this meeting with counsel until after he filed his notice of appeal in July of 2019, the admission supports the notion that the court's written analysis supporting its dismissal of the first amended complaint was readily available on its tentative rulings webpage, as the court told Ree it would be during the hearing on the motion to dismiss.

amended complaint.

**G.    The imposition of Rule 9011 sanctions.**

Under Rule 9011(b), when Ree submitted his first amended complaint to the bankruptcy court, he certified: (1) that it was not presented for an improper purpose; (2) that the complaint's legal contentions were warranted by existing law or by a nonfrivolous argument urging a change to existing law; and (3) that the allegations had evidentiary support or were likely to have evidentiary support after a reasonable opportunity for investigation or discovery. *See* Rule 9011(b)(1)-(3); *see also Dressler v. The Seeley Co. (In re Silberkraus)*, 336 F.3d 864, 870 (9th Cir. 2003) (describing nature of certifications).

When a party's Rule 9011 certifications turn out to be false, the bankruptcy court may impose sanctions, including reasonable attorney's fees, so long as the moving party demonstrates both frivolousness and improper purpose. *See* Rule 9011(c)(2); *In re Silberkraus*, 336 F.3d at 870 (citing *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 830 (9th Cir. 1994)). The assessment of these two factors is considered on a sliding scale "where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *In re Silberkraus*, 336 F.3d at 870 (quoting *In re Marsch*, 36 F.3d at 830). A filing is frivolous if it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). And a filing

25

is made for an improper purpose if, for example, it is filed "to harass or to cause unnecessary delay or needless increase in the cost of litigation." *In re Silberkraus*, 336 F.3d at 870 (quoting Rule 9011(b)).[6]

Ree has not challenged the legal standards the bankruptcy court applied or the findings it made in support of its imposition of sanctions. He merely argues on appeal that Rule 9011 does not apply in adversary proceedings. This is simply wrong. The advisory committee notes accompanying Rule 7001 reflect that adversary proceedings are subject to Rule 9011. Furthermore, the Ninth Circuit has applied Rule 9011 to frivolous adversary complaints. *See In re Grantham Bros.*, 922 F.2d at 1440; *see also Weinstein, Pinson & Riley, P.S. v. Nelson (In re Nelson)*, 650 F. App'x 528 (9th Cir. 2016).[7]

Ree's appeal brief also mentions in passing that he should not have

---

[6] Pro se litigants are bound by the same procedural rules that govern practice in counseled cases. *See Clinton v. Deutsche Bank Nat'l Tr. Co. (In re Clinton)*, 449 B.R. 79, 83 (9th Cir. BAP 2011); *see also Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) (stating that "pro se litigants are not excused from following court rules.").

[7] The sanctions motions actually referenced Civil Rule 11 rather than Rule 9011. The bankruptcy court apparently treated the motion as one seeking relief under Rule 9011. The two rules are virtually identical and the applicable legal standards are similar. *See generally In re Marsch*, 36 F.3d at 829-30 (discussing the rules' textual similarities and policy differences). Ree has not challenged how the court treated the sanctions motion. Nor was treatment of Civil Rule 11 and Rule 9011 as functional equivalents erroneous in this context. As we have stated, Rule 9011 is the bankruptcy cognate to Civil Rule 11. *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 899 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017) (citing *In re Marsch*, 36 F.3d at 829).

been sanctioned under Rule 9011 because Jeong did not prove that he did not commit fraud. This argument misses the point. Prevailing on the merits of the underlying litigation is not a prerequisite to the imposition of Rule 9011 sanctions. Instead, as stated above, Jeong as the moving party only needed to establish frivolousness and improper purpose. *See In re Silberkraus*, 336 F.3d at 870. Therefore, Ree has not persuaded us that the bankruptcy court abused its discretion when it imposed against him $3,000.00 in Rule 9011 sanctions.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order dismissing Ree's adversary proceeding and its order imposing sanctions.